WHITTAKER, RESPONDENT, *v.* CITY OF HELENA, APPELLANT.

[Submitted March 22, 1893. Decided February 19, 1894.]

NEGLIGENCE—*Driver of vehicles.*—The negligence of the owner and driver of a private vehicle is imputable to one voluntarily riding with him by invitation, and defeats the right of the latter to recover damages against a city for injuries caused by its negligence when such driver was guilty of contributory negligence.

*Appeal from First Judicial District, Lewis and Clarke County.*

THE cause was tried before BUCK, J., who denied defendant's motion for new trial. Reversed

*Sydney H. McIntire, City Attorney,* for Appellant.

I. The theory of the defense all the way through this case was that, if the obstructions to Grand street were permitted to remain there, the city having enacted ordinances prohibiting obstructions to the public streets, and making it the duty of the public police officers to remove such obstructions, the failure or neglect of such officers to do their duty in the premises would not make the city liable for any accidents occasioned thereby. The law is well settled that a municipal corporation is not liable for the willful and unlawful conduct or neglect of a clear duty of the police officers; that such police officers are the conservators of the public peace and agents of the public at large and citizens of the entire state, and not in any sense agents of the municipal corporation, even though the municipal corporation employs and pays them; they cannot bind the corporation by any act of theirs, or cast upon it any liability for their misconduct or failure to perform their duty; and in no sense has the doctrine of *respondeat superior* been held to apply in classes of cases similar to the one at bar. (*Peters* v. *City of Lindsborg,* 40 Kan. 654; *Wheeler* v. *City of Plymouth,* 116 Ind. 158; 9 Am. St. Rep. 837; *Weller* v. *City of Burlington,* 60 Vt. 28; *Hines* v. *City of Charlotte,* 72 Mich. 278; *Calwell* v. *City of Boone,* 51 Iowa, 687; 33 Am. Rep. 154; *Little* v. *Madison,* 49 Wis. 605; 35 Am. Rep. 793; *Schultz* v. *Milwaukee,* 49 Wis. 254; 35 Am. Rep. 779; *Cole* v. *Newburyport,* 129 Mass. 594; 37 Am. Rep. 394; *Board of Trustees* v. *Schrader,* 58 Ill. 353; *Worley* v. *Inhabitants etc.,* 88 Mo. 106; *Prince* v. *Lynn,* 149 Mass. 193; 2 Dillon on Municipal Corporations, § 975; *Lafayette* v. *Timberlake,* 88 Ind. 330; *Norristown* v. *Fitzpatrick,* 94 Pa. St. 121; 39 Am. Rep. 771.) There was no proof of negligence on the part of the defendant, or any of its agents, in this case, and the motion for nonsuit should have been granted.

II. The obstruction in the street must be the proximate cause of the injury to render the city liable. It was not in this case. The city cannot be held liable for injuries occasioned by wild, skittish, or runaway horses. The witness Dunn tried to make out that his horse was not easily fright-

ened, but the fact remains that he was. This case seems to be similar to *Agnew* v. *Corunna,* 55 Mich. 428; 54 Am. Rep. 383; *Bluffton* v. *Mathews,* 92 Ind. 213; *Pullman Palace Car Co.* v. *Barker,* 4 Col. 344; 34 Am. Rep. 89; 2 Thompson on Negligence, 1098; 2 Dillon on Municipal Corporations, § 1015; *Titus* v. *Northbridge,* 97 Mass. 258; 93 Am. Dec. 91; *Stone* v. *Hubbardston,* 100 Mass. 54. The proximate cause of this injury was unquestionably the conduct of the horse, and Dunn's inability to manage him while frightened and shying.

III. For injuries sustained from licensed exhibitions rendering streets unsafe through the failure of police officers to remove them, the city would not be liable. (2 Dillon on Municipal Corporations, § 1011 *a; Little* v. *Madison,* 49 Wis. 605; 35 Am. Rep. 793; *Cole* v. *Newburyport,* 129 Mass. 594; 37 Am. Rep. 394; *City of Warsaw* v. *Dunlap,* 112 Ind. 576.)

IV. The evidence seems to show that Dunn was heated at his discussion in the council, and purposely put himself into a position of danger, with full knowledge of what he was doing. Should the city be held responsible for his reckless acts in courting this accident? Certainly, in his own case, he could not recover damages for his injuries, if any, because he contributed directly to the result. And there are authorities holding that the plaintiff was in the same position and is governed by the same rules. (*Otis* v. *Janesville,* 47 Wis. 422; *Prideaux* v. *Mineral Point,* 43 Wis. 513; 28 Am. Rep. 558; *Lake Shore etc. R. R. Co.* v. *Miller,* 25 Mich. 274; *Houfe* v. *Fulton,* 29 Wis. 296; 9 Am. Rep. 568.)

*F. Adkinson,* and *John S. Miller,* for Respondent.

That the city is liable for damages upon the facts shown by the testimony, see American and English Encyclopedia of Law, volume 9, page 386, and authorities therein cited. The negligence of Dunn, if any, could not be imputed to the plaintiff, and the proof is uncontradicted that the plaintiff did not know of the existence of the tent until they came upon it, while there are some authorities which sustain the instruction of the court upon this point, the great weight of them is to the contrary. But however this may be, the instruction was not prejudicial to the appellant, and is not one of which the city

can complain. (*Metcalf* v. *Baker*, 11 Abb. Pr., N. S., 431; *Robinson* v. *New York Cent. & H. R. R. R. Co.*, 66 N. Y. 11; 23 Am. Rep. 1; *Dyer* v. *Erie Ry. Co.*, 71 N. Y. 228.)

Pemberton, C. J.—This is an action to recover damages for personal injuries sustained by plaintiff by being thrown from a buggy in the streets of said defendant city. Among other things, the complaint alleges, substantially, that on the thirtieth day of August, 1890, and for some days prior thereto, the defendant wrongfully and negligently authorized and permitted a certain show to be maintained and conducted in a tent, or canvas-covered wagon, on Grand street, in said city; that said show was such an obstruction as to render travel along said street unsafe and dangerous, and was of such character as to frighten gentle and well-broken horses driven along said street; that on said thirtieth day of August plaintiff was riding in a buggy drawn by a safe and gentle horse, which was being driven with due care and caution along said street, when said horse, without any fault or negligence of plaintiff, became frightened at said show tent or wagon, became unmanageable, and ran away, upsetting said buggy and throwing plaintiff to the ground with great force, whereby he was greatly injured and damaged; that plaintiff, in the lawful transaction of his business, had necessarily to pass along said street. The allegations of the complaint are denied by the answer. The case was tried in the court below with a jury, and resulted in a verdict for the plaintiff for one thousand dollars, for which sum judgment was rendered. Defendant moved for new trial, which was denied. This appeal is prosecuted from the judgment and order denying the motion for new trial.

The evidence clearly shows that the plaintiff, at the time of the accident set forth in his complaint, was riding with one James S. Dunn, who owned the buggy and horse, and was driving the same. Dunn, it seems, was on his way to lunch, and invited plaintiff, who lived in the same part of the city, to ride with him, as it seems he did almost every day prior thereto. The evidence does not show that plaintiff knew of the existence of the alleged obstruction to travel on the street, but Dunn swears that he knew of it. Dunn was, at the time,

an alderman of the city. It appears from that evidence the the accident to plaintiff occurred at about one o'clock, P. M., on the thirtieth day of August. [At twelve, M., of said day there was a meeting of the city council of said city. Dunn swears that he was at that meeting, and in an earnest and excited manner called the attention of the council to the fact that this show in the tent or wagon was located and doing business on Grand street, and also called the attention of the council to its dangerous character; that the mayor stated that he would see to its removal at once; that thereupon the council adjourned, and that he went immediately to Edwards street, got his horse and buggy, drove to Main street, took the plaintiff into his buggy, as he was in the habit of doing every day, and started up Grand street, and, in attempting to pass this tent or wagon, the accident happened which resulted in plaintiff's being injured and damaged; that the tent or wagon was on one side of the street, and a pile of rock the city was using in work on the street was on the opposite side of Grand street from the tent or wagon; that, in attempting to pass between the tent or wagon and said pile of rock, the horse became frightened, and ran the buggy over the rock pile, turning the buggy over, throwing the occupants out, and inflicting upon the plaintiff the injuries for which he sues in this action. This evidence of Dunn is in no way questioned. That he knew the obstructed and dangerous condition of Grand street (if it was in a dangerous and obstructed condition) when he drove upon it is beyond dispute. Under this state of facts, could Dunn recover if he were prosecuting this suit against the city? If he could not recover, can this plaintiff, who was voluntarily riding with him in his buggy, recover? Was Dunn guilty of such contributory negligence as would defeat his right to recovery, when he drove upon the street, knowing the condition thereof? If so, was his negligence imputable to the plaintiff, so as to defeat a recovery on his part?

In *Prideaux* v. *Mineral Point*, 43 Wis. 513, 28 Am. Rep. 558, a case involving the question under discussion, the court says: "One voluntarily in a private conveyance voluntarily trusts his personal safety in the conveyance to the person in control of it. Voluntary entrance into a private conveyance adopts

the conveyance, for the time being, as one's own, and assumes the risk of the skill and care of the person guiding it. *Pro hac vice*, the master of a private yacht, or the driver of a private carriage, is accepted as agent by every person voluntarily committing himself to it. When *paterfamilias* drives his wife and child in his own vehicle, he is surely their agent in driving them, to charge them with his negligence. It is difficult to perceive on what principle he is less the agent of one who accepts his or their invitation to ride with them. There is a personal trust in such cases, which implies an agency. So, several persons voluntarily associating themselves to travel together in one conveyance not only put a personal trust in the skill and care of that one of them whom they trust with the direction and control of the conveyance, but appear to put a personal trust each in the discretion of each against negligence affecting the common safety. One enters a public conveyance in some sort of moral necessity. One generally enters a private conveyance of free choice, voluntarily trusting to its sufficiency and safety. It appears absurd to hold that one voluntarily choosing to ride in a private conveyance trusts to the sufficiency of the highway; to the care and skill exercised in all other vehicles upon it; to the care and skill governing trains at railroad crossings; to the care and skill of every thing except that which is most immediately important to himself—and trusts nothing to the sufficiency of the very vehicle in which he voluntarily travels; nothing to the care and skill of the person in charge of it. His voluntary entrance is an act of faith in the driver; by implication of law, he accepts the driver as his agent to drive him. In the absence of express adjudication, the general rules of implied agency appear to sanction this view. . . . . . A woman may, and should, refuse to ride with a man if she dislike or distrust the man, or his horse, or his carriage. But, if she voluntarily accept his invitation to ride, the man may, indeed, become liable to her for gross negligence; but, as to third persons, the man is her agent to drive her—she takes man, and horse, and carriage for the jaunt; for better, for worse." *Otis* v. *Town of Janesville*, 47 Wis. 422, 2 N. W. Rep. 783, is to the same effect.

In *Lake Shore etc. R. R. Co.* v. *Miller*, 25 Mich. 274, a case

involving the question whether or not the negligence of the driver of a private team was imputable to one who was riding voluntarily with the driver, Mr. Chief Justice Christiancy, speaking for the court, says: "The materiality of this question must depend upon another—whether the plaintiff's own negligence or that of Eldridge, who was driving the team, contributed to the injury, within the meaning of the generally settled rule upon this subject; for, as she was riding with Eldridge, the owner and driver of the team, any negligence of Eldridge equally affects her rights in this suit. as was properly held by the court."

These authorities all hold that if the negligence of the party injured, or of his driver, which is imputed to him, materially contributed to the injuries, he cannot recover, although the party complained of has not been free from negligence.  In the case at bar it seems clear that Dunn was not only guilty of contributory negligence, but that he was reckless in driving into a street which he swears he knew to be dangerously obstructed.  His negligence must be held as imputable to plaintiff.  If Dunn could not recover under the facts and circumstances of the case, neither could the plaintiff, although the defendant may have been guilty of negligence on its part, which it is not necessary in this case to determine.  There are other assignments of error in the record, but we do not consider it necessary to consider them, as we think the treatment above decisive of the case.  The court below recognized the law as stated above as applicable to this case, and so declared it to the jury in the instructions given.  But the verdict seems to us to have been rendered in disregard of the law as given by the court, as well as of the evidence in the case.  We think the court should have granted, for these reasons, the motion of the defendant for a new trial.

The judgment is therefore reversed, and cause remanded for new trial.

*Reversed.*

HARWOOD, J., concurs.