LAIRD, RESPONDENT, v. BERTHELOTE ET AL., APPELLANTS.

(No. 4,742.)

(Submitted March 10, 1922. Decided April 10, 1922.)

[206 Pac. 445.]

*Personal   Injuries—Highways—Automobiles—Negligence    of Husband not Imputable to Wife — Public Officers — County Commissioners—Liability for Negligence of Subordinates— Respondeat Superior — Inapplicability of Doctrine — Appeal and Error—Exceptions.*

Personal Injuries—Highways—Automobiles—Negligence of Husband not Imputable to Wife.

    1. *Held* that, conceding that plaintiff's husband by whom she was being driven in an automobile in the night-time to a railway station to catch a train was negligent in not exercising due care in approaching an obstruction in the highway, his negligence was not imputable to her, nothing appearing that she was in control of the car or directing the driving. (Overruling *Whittaker* v. *City of Helena*, 14 Mont. 124.)

Same—County Commissioners—Nonliability for Negligence of Subordinates.

    2. Under the general rule that a public officer is not responsible for the acts or omissions of his subordinates, county commissioners may not be held liable in damages for injuries to a traveler on a public highway caused by the negligence of a bridge foreman, a county employee, in leaving an obstruction therein unguarded, where they had no notice of the dangerous condition created by him and had not ordered him to do the repair work in which he was engaged, in the way in which he was doing it.

Same—*Respondeat Superior*—Nonapplicability of Doctrine.

    3. The maxim of *respondeat superior* applies only to the personal relation of master and servant, or principal and agent, and not to the relation existing between county commissioners and a bridge foreman, employed by the county.

Appeal and Error—Refusal of Instruction—Exception Prerequisite to Review on Appeal.

    4. Failure of counsel to reserve an exception to the refusal of an instruction bars review of the action of the court in refusing it.

---

    1. Negligence of automobile driver as imputable to occupant of car, see notes in 19 Ann. Cas. 1225; Ann. Cas. 1918B, 241; Ann. Cas. 1918C, 961; L. R. A. 1915B, 953.

    2. Liability of public officer for acts of subordinates, see note in 12 Ann. Cas. 185.

*Appeals from District Court, Hill County; W. B. Rhoades, Judge.*

ACTION by Elizabeth T. Laird against Joseph C. Berthelote and others. From a judgment for plaintiff, defendants appeal from it and an order denying them a new trial. Affirmed as to defendant P. R. Neilson; reversed as to other defendants, with directions to dismiss.

*Mr. L. V. Beaulieu, Mr. A. F. Lamey, Mr. C. A. Rose, Mr. C. R. Stranahan* and *Messrs. Norris, Hurd & Hauge,* for Appellants, submitted a brief; *Mr. Edwin L. Norris* argued the cause orally.

Respondent was guilty of such contributory negligence as prevents her recovery herein. She and her husband were running a car without lights or without sufficient lights, and hence contrary to law, or if they had the lights as they claimed, they failed to see the trench into which the car ran when, had they been observant, they could have seen the same, and under either condition they were guilty of such negligence as prevents recovery herein. (*McDonald* v. *Yoder,* 80 Kan. 25, 101 Pac. 468; *Warner* v. *Bertholf,* 40 Cal. App. 776, 181 Pac. 808; *Barker* v. *Savas,* 52 Utah, 262, 172 Pac. 672; *Lauson* v. *Town of Fond du Lac,* 141 Wis. 57, 135 Am. St. Rep. 30, 25 L. R. A. (n. s.) 40, 123 N. W. 629; *Fenn* v. *Clark,* 11 Cal. App. 79, 103 Pac. 944; *Fisher* v. *O'Brien,* 99 Kan. 621, L. R. A. 1917F, 610, 162 Pac. 317; *Coughlin* v. *Layton,* 104 Kan. 752, 180 Pac. 805; Blackmore on Automobiles, sec. 409.)

Under no theory may appellants Berthelope, Crossan and Watters be held liable. They cannot be held liable in their official capacities. (29 Cyc. 1445; *Colby* v. *City of Portland,* 85 Or. 359, 166 Pac. 537; *City of Duluth* v. *Ross,* 140 Minn. 161, 167 N. W. 485; *Skerry* v. *Rich,* 228 Mass. 462, 117 N. E. 824; *State* v. *Kolb,* 201 Ala. 439, 1 A. L. R. 218, 78 South. 817; *United States* v. *Rogde,* 214 Fed. 283; *Lunford* v. *John-*

*son,* 132 Tenn. 615, 179 S. W. 151; *Barker* v. *Chicago, P. & St. L. R. Co.,* 243 Ill. 482, 134 Am. St. Rep. 382, 26 L. R. A. (n. s.) 1058, 90 N. E. 1057; *Bowden* v. *Derby,* 97 Me. 536, 94 Am. St. Rep. 516, 63 L. R. A. 223, 55 Atl. 415; *Farrigan* v. *Pevear,* 193 Mass. 147, 118 Am. St. Rep. 484, 8 Ann. Cas. 1109, 7 L. R. A. (n. s.) 481, 78 N. E. 855; *Barry* v. *Smith,* 191 Mass. 78, 6 Ann. Cas. 817, 5 L. R. A. (n. s.) 1028, 77 N. E. 1099; Mechem on Agency, 2d ed., sec. 1502.)

The doctrine of *respondeat superior* does not apply to said three appellants in their official capacities. (34 Cyc. 1673; 29 Cyc. 543; 26 Cyc. 1519; Thompson on Negligence, sec. 601; Dillon on Municipal Corporations, 5th ed., sec. 442; 31 Cyc. 979; 35 Cyc. 972; *Melchionda* v. *American Locomotive Co.,* 229 Mass. 202, 118 N. E. 285; *Stoddard* v. *Fiske,* 35 Cal. App. 607, 170 Pac. 663; *Homboe* v. *Neale* (Okl.), 171 Pac. 334; *Donovan* v. *McAlpin,* 85 N. Y. 185, 39 Am. Rep. 649; *Bassett* v. *Fish,* 75 N. Y. 303.)

James Laird was either the agent of the respondent or he and the respondent were engaged in a common enterprise. If James Laird was the agent of the respondent and he was negligent, as we insist he was, the respondent may not recover under the rule of law stated in Blackmore on Automobiles, section 1023, and the cases there cited. We submit that James Laird and the respondent on this trip were engaged in a common enterprise, to-wit, the making of a journey by automobile from the home of respondent and her husband to the railway for the purpose of enabling respondent to board the eastbound train. "The negligence of a driver of an automobile cannot be imputed to a passenger unless the driver was the agent of the passenger or they were engaged in a common enterprise." (Blackmore on Automobiles, sec. 1024; *Wentworth* v. *Town of Waterbury,* 90 Vt. 60, 96 Atl. 334; *McLaughlin* v. *Pittsburgh Rys. Co.,* 252 Pa. 32, 97 Atl. 1007; *Latimer* v. *Anderson County,* 95 S. C. 187, 78 S. E. 879.)

*Mr. Victor R. Griggs,* for Respondent, submitted a brief and argued the cause orally.

We respectfully submit that under the general highway law as it existed at the time the action arose, and under the general rule as laid down in the *Zimmer Case* (45 Mont. 282, 125 Pac. 420), the members of the board of county commissioners have a duty to maintain the highways in a reasonably safe condition for public travel, and they are liable for any damage sustained by reason of their neglect in this respect, provided the person injured is not himself guilty of contributory negligence; that the defect causing the injury in this case, having been created by the commissioners themselves, no notice of such defect was necessary, and upon causing such defect, it then became and was the duty of the commissioners to see to it that proper warning was given the traveling public of the existence of the same; and further, under the provisions of section 384 of the 1907 Codes, the commissioners are liable for the negligence in this case of their employee, Neilson.

Appellants contend that the respondent and the driver of the car, her husband, were engaged at the time of the accident in a joint enterprise, and that for that reason the negligence of the driver, James Laird, if any, is imputed to the respondent, his wife. They cite Blackmore, section 1024, which gives an illustration entirely different from the relation of husband and wife, and the citation is, therefore, not in point. The rule applicable to this case is laid down in Berry on Automobiles, second edition, section 319, as follows: "The rule that the negligence of the operator is not imputable to a guest or passenger riding in the automobile applies as between a husband who is driving and his wife who is riding with him. * * * The better rule seems to be that a wife riding with her husband is entitled to rely upon him to look out to a great extent for her safety and that by so doing she is not chargeable with his negligence." *(Knoxville R. & L. Co.* v.

Van Gilder, 132 Tenn. 487, L. R. A. 1916A, 1111, 178 S. W.
1117; Williams v. Withington, 88 Kan. 809, 129 Pac. 1148.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of
the court.

Action for personal injuries alleged to have been suffered
by plaintiff through the negligence of the defendants. The
defendants Berthelote, Crossan and Watters were at the time
of the accident members of the board of county commissioners
of Hill county, and the defendant Neilson was the county
bridge foreman. At about 8 o'clock on the evening of October
7, 1918, James Laird, accompanied by the plaintiff, his wife,
was driving a Ford car from Joplin, Liberty county, to Havre,
Hill county, to enable the plaintiff to take the early morning
train on the Great Northern Railroad from that place to La
Crosse, Wisconsin, she having been called thither by telegram
informing her of the death of a friend. A short distance
south of Gildford, in Hill county, the road along which they
were traveling crosses Sage Creek by means of a bridge. At
this point the road extends north and south. The bridge
being old, and somewhat out of repair, work had been begun
by defendant Neilson, by direction of the board of commis-
sioners to build a new one in its place. To accommodate the
public during the progress of the operations, a temporary
bridge had been constructed over the creek a short distance
to the west of the old bridge, and it was made available for
use by a temporary road connecting it with the public road
fifty or sixty feet south of the old bridge. On the approach
to the bridge to the left of one coming from the south, and
twelve feet distant from the bridge, was a pile-driver, the
frame of which extended toward the east to about the middle
of the road. The approach was made of earth. A trench,
variously estimated by plaintiff's witnesses to be from two and
a half to four feet in width and from four to six feet in depth,
had been dug during the operations entirely across it im-

mediately south of the pile-driver, the purpose of it being to facilitate the driving of piles for the abutment of the new bridge. The earth from the trench had been thrown on the north side, making an embankment from two and a half to three feet high. Some piles had been driven toward the west end of the trench which projected somewhat above the surface. To the east the trench was open. There was room for a vehicle to pass the pile-driver and reach the bridge by turning to the east side of the beaten track of the roadway. The car was driven by Laird, the plaintiff sitting in the front seat by his side. He approached the bridge from the south, failing to observe the temporary road as well as the trench, with the result that the front wheels of the car went into the trench. The plaintiff was thrown out on the east side, suffering a fracture of the tibia of her right leg immediately below the knee, and also injury to the ligaments of her right thumb.

It is charged in the complaint that after the removal of a portion of the bridge by digging the trench the defendants negligently and carelessly omitted to place a barrier, signal or warning of any description thereon, or near by, sufficient to give notice to the public of the existence of the trench, thus leaving it entirely unguarded; that plaintiff had no knowledge of the operations in progress to repair the bridge or of the existence of the trench, and that by reason of this negligence of the defendants the car in which plaintiff was riding ran into the trench in such a manner that the plaintiff was thrown violently to the ground and sustained the injuries complained of.

The defendants deny all the allegations in the complaint charging them with negligence, and allege that plaintiff was guilty of contributory negligence precluding her right of recovery. There was issue by reply. A trial to a jury resulted in a verdict against all of the defendants for the sum of $1,500. They have appealed from the judgment and an order denying their motions for a new trial.

The principal contention made by counsel for defendants is that the judgment cannot be upheld for the reason that the evidence introduced by plaintiff discloses affirmatively and as a matter of law that her own negligence was a proximate cause of her injury. In this connection contention is also made that [1] it is clear that the husband was guilty of negligence, and hence that his negligence must be imputed to the plaintiff. This argument proceeds upon the theory that, as there was no evidence tending to show that the plaintiff was a passenger for hire, the conclusion must follow either that her husband was her agent, or that the two were engaged in a joint enterprise. For the purpose of this case it may be conceded, without deciding, that the husband was guilty of negligence. It does not therefore follow, however, that plaintiff was guilty of negligence, or that her husband's negligence should be imputed to her on either theory advanced by counsel. It is true that there is no controversy in the evidence as to these facts: That the car was an ordinary Ford car; that it was in good order; that the plaintiff sat in the front seat at the right of her husband, who was driving at a rate of speed not exceeding six miles per hour, with his foot on the brake; that the lights were in good order, and were burning, casting their rays to the distance of 100 feet in advance of the car; that a car moving at the rate of speed at which this one was moving could have been stopped within a distance of five or six feet; that the pile-driver occupied a part of the beaten track of the road, and that a person in plaintiff's position might have observed the trench and the bank of earth on the opposite side of it. The plaintiff testified: "When we were approaching the pile-driver, both Mr. Laird and I noticed it at the same time and spoke of it. We both became very cautious about that time. * * * I could not tell you the speed of the car when we saw the pile-driver, but we were going very slow, because we didn't know that they were repairing the bridge, but we knew it was a bridge there, and we were going down

an incline, and we were going carefully. We might have been going faster than an ordinary walk, because usually, if a car is going at all, it goes as fast as a walk. I don't think we were going any faster than five or six miles an hour. When I saw the pile-driver in the road, I thought that something might happen. I don't know if Mr. Laird thought the same thing, but we saw there was danger there. There was sufficient warning so that we knew there was danger ahead, and with that in mind we crawled along very cautiously. * * * When we saw the pile-driver, I think he turned out in order to get past it, but I don't know if both the wheels were off the main driveway in order to get past the pile-driver. I don't know whether or not we passed the pile-driver before we went into the ditch. * * * I was not driving the car, and I was frightened, so I don't know just whether we passed the pile-driver or not. We knew that we had quite a place to go through. If we couldn't get through I thought there was danger ahead, and was very anxious to make it. I was anxious to make the train at 2 o'clock, although when we left Joplin we both talked it over that we would go into Havre very slow and carefully because we had until that time in the morning to make the train. * * * I didn't see the ditch, and we don't know whether or not it went clear across the main driveway of the road. I was looking ahead across the bridge. * * * The lights were working in good shape on the car that night. We were going down hill when we went into the the ditch. * * * I couldn't say just how far ahead the lights were shining at that time. You know, the lights are quite good on an ordinary Ford car.''

No person other than plaintiff and her husband witnessed the accident. The testimony of Laird agreed in all substantial particulars with that of the plaintiff. Neither observed the road leading to the temporary bridge to the west. Both could observe, as they approached it, that the old bridge was still in place, for there was a light beyond it toward the north

which enabled them to observe the side railings. Both had recently passed over it. Neither had knowledge that it was undergoing repairs other than such as might have been suggested by the presence of the pile-driver or the bank•of earth, if they observed it. Both testified that there was neither a visible barrier nor light to indicate that anything out of the ordinary had occurred since they had passed that way, and also that there was ample room to pass to the right of the pile-driver and gain the bridge without leaving the beaten track of the roadway. The pile-driver occupying a part of the road probably did not do more than suggest to plaintiff that there might be danger beyond it after she had observed that there was no barrier across the road, and that there was ample room to pass it. Considering these admitted facts, we do not think they justify a conclusion, as a matter of law, that plaintiff was herself guilty of negligence. She had been summoned by telegram to be present at the burial of a friend. As is usually the case under such circumstances, the husband was assisting her at her request to reach the train at Havre. She was doubtless affected more or less by her feelings of grief for the loss of her friend, and therefore was perhaps not fully alive to the surroundings. And the facts that the husband was at the wheel, that they were traveling over a public road, and that even he was not under obligations to keep a sharp lookout for extraordinary dangers, certainly she could not be expected to do so. She was not in control of the car, nor was she directing the driving. She was therefore not personally chargeable with the manner of doing it nor with the responsibility of directing how it should be done. We think the question whether she was exercising due care, though she failed to observe the trench and the bank of earth and call her husband's attention to them, was to be answered by the jury.

Counsel cite and rely on the case of *Sherris* v. *Northern Pacific Ry. Co.*, 55 Mont. 189, 175 Pac. 269. This case is

clearly distinguishable in its facts from those in the instant case.   There a young man was injured in a collision of a car in which he was being driven by a companion, with a railway train while crossing the railway yards, a place known to be dangerous.   It was held that a verdict in favor of the railway company was justified by the evidence on the theory that the plaintiff himself was guilty of contributory negligence, the evidence disclosing that he was fully aware of the danger, had the same opportunity to notice the approach of the train as had his companion, and relied on his own efforts to protect himself.   Here no known danger confronted the plaintiff. The circumstances were not sufficient to arouse in her mind more than a surmise that there might be danger.   In her own words: "When I saw the pile-driver in the road, I thought that something might happen.   I don't know if Mr. Laird thought the same thing, but we saw there was danger there." From the reading of her testimony as a whole, the danger which she had in mind, it is not unreasonable to infer, was what she apprehended from the apparent partial obstruction of the roadway by the pile-driver.

It follows from what has been said above that, conceding that Laird was not exercising due care in approaching the bridge, his negligence does not preclude plaintiff's recovery.

Mr. Thompson, in his Commentaries on the Law of Negligence, after discussing the subject of imputed negligence as applied to a passenger riding in a private conveyance by the invitation of the driver, declares it to be the rule generally recognized by the great weight of authority that the negligence of the driver is not generally imputed to the passenger if the latter has no duty of control over the former, and no reason to suspect any want of care, skill or sobriety on his part.   The author also recognizes that this rule does not always absolve the passenger from taking such precaution for his own safety as under the particular circumstances are reasonable. If, for example, the "passenger is riding by the side of the

driver in an open carriage, and the driver on approaching a
railway track fails to make use of his own faculties if a train
is approaching, then it is a reasonable suggestion that the
passenger ought to call his attention to the circumstances and
remonstrate with him, or, if necessary to his own safety,
leave the vehicle." (Volume 1, secs. 502, 503.) This excep-
tion to the general rule was recognized and applied by this
court in the case of *Sherris* v. *Northern Pacific Ry. Co., supra.*
With reference to husband and wife, the author says: "Al-
though there are a few holdings to the contrary, mostly in
jurisdictions where the doctrine of imputed negligence is
recognized, yet there is no ground in reason or justice grow-
ing out of the marital relations for making a different rule
from the one just discussed, for the case where a wife has
committed her safety to her husband—as where she is riding
in a vehicle and he is driving—than in any other case; and
the weight of authority is that in such a case, the negligence
of the husband is not imputed to the wife." (1 Thompson on
Negligence, sec. 504.)

In the case of *Reading Township* v. *Telfer,* 57 Kan. 798, 57
Am. St. Rep. 355, 48 Pac. 134, the facts were that the wife
was injured while riding with her husband in a vehicle over
a defective highway. Although it had appeared that the ride
had been taken at the solicitation of the wife, the court held
that the fault of the husband was not to be imputed to the
wife, although the sexes are recognized by the law as standing
upon the same level, saying: "By the universal sense of man-
kind, a privilege of management, a superiority of control, a
right of mastery on such occasions is accorded to the hus-
band, which forbids the idea of a co-ordinate authority, much
less a supremacy of command, in the wife. His physical
strength and dexterity are greater; his knowledge, judgment,
and discretion assumed to be greater; all sentiments and in-
stincts of manhood and chivalry impose upon him the obliga-
tion to care for and protect his weaker and confiding com-

panion; and all these justify the assumption by him of the
labors and responsibilities of the journey, with their accom-
panying rights of direction and control. The special facts of
cases may show the wife to be the controlling spirit, the active
and responsible party, and the husband an agent, or even a
mere passenger; but, in cases where such facts are not shown,
the court must presume, in accordance with the ordinary,
almost universal, experience of mankind, that the husband
assumed and was allowed the responsible management of the
journey." To the same effect was the holding in *Williams*
v. *Withington*, 88 Kan. 809, 129 Pac. 1148. The following
authorities are sufficient to illustrate the prevailing view an-
nounced by the courts on the subject: *Shultz* v. *Old Colony
Street Ry. Co.*, 193 Mass. 309, 118 Am. St. Rep. 502, 9 Ann.
Cas. 402, 8 L. R. A. (n. s.) 597, and note, 79 N. E. 873; *Cot-
ton* v. *Willmar & S. F. R. Co.*, 99 Minn. 366, 116 Am. St.
Rep. 422, 9 Ann. Cas. 935, 8 L. R. A. (n. s.) 643, and note,
109 N. W. ,835; *Little* v. *Hackett*, 116 U. S. 366, 29 L. Ed.
652, 6 Sup. Ct. Rep. 391; *Southern Ry. Co.* v. *King*, 128 Ga.
383, 119 Am. St. Rep. 390, 11 L. R. A. (n. s.) 829, 57 S. E.
687; *Louisville Ry. Co.* v. *McCarthy*, 129 Ky. 814, 130 Am. St.
Rep. 494, 19 L. R. A. (n. s.) 230, 112 S. W. 925; Babbitt on
the Law Applied to Motor Vehicles (Blackmore ed.), secs.
1019–1023; 29 Cyc. 542, 543; 20 R. C. L., pp. 151, 158, 163.
In *Sherris* v. *Northern Pacific Ry. Co.*, *supra*, this court ap-
proved the rule as stated by Mr. Justice Rugg in *Shultz* v.
*Old Colony Street Ry. Co.*, *supra*, as founded upon sound
principle and supported by almost all the courts throughout
the United States, after expressing disapproval of the rule an-
nounced by the courts of Michigan and Wisconsin, which
was followed by this court in the early case of *Whittaker* v.
*City of Helena*, 14 Mont. 124, 43 Am. St. Rep. 621, 35 Pac.
904. In view of the fact that the doctrine announced in that
case is out of harmony with the almost unanimous opinion
of the federal and state courts, this case is expressly overruled.

It is contended that the defendants Berthelote, Crossan and Watters cannot be held liable in their capacity as members [2] of the board of county commissioners for the negligence of Neilson. The theory of counsel is that, being public officers, they cannot be liable for the default of Neilson though he was appointed by them as a board and occupies the position of county bridge foreman as their mere subordinate. It was held in the case of *Smith* v. *Zimmer,* 45 Mont. 282, 125 Pac. 420, that a county is not liable for injuries caused by a defect in a highway. In that case a majority of the members of this court were agreed that members of a board of county commissioners are chargeable with a negligence of one acting as road supervisor appointed by them and acting under their supervision and control, in failing to repair a defect in a public road caused by high water or to give seasonable warning to the public of its condition by the erection of barriers, *etc.,* after notice of it. It will be noted, however, that upon rehearing the holding announced in the original opinion was rendered indecisive as to what character of notice would suffice to charge the members of the board. Though nothing specific was said on the subject, it is clear from the opinion that they were declared to be liable upon the theory that after notice they had been guilty of neglecting to perform their official duty by requiring the supervisor to do his duty, and that he was held to be personally liable for his own negligence in this regard. It was not suggested by anything said in the opinion with reference to his relation to the members of the board that he was their employee in the sense that he was their servant. Indeed, such was not the fact. Though he was appointed by them, he was not their employee but an employee of the county, and paid by it for his services, just as Neilson was appointed and paid. "Public officers are not, as a general rule, liable for the acts of subordinates, even where such subordinates are employees rather than officers, except

where the negligence of such subordinates is attributable to the superior.'' (29 Cyc. 1445.)

In 23 American & English Encyclopedia of Law, second edition, it is said: ''It is a well-settled rule that a public officer is not responsible for the acts or omissions of subordinates properly employed by or under him, for such subordinates are not in his private service but are themselves servants of the government, unless he has directed such acts to be done or has personally co-operated in the negligence. Such an officer is, however, liable for the misconduct and negligence in the scope of their employment of those employed by or under him voluntarily or privately or paid by or responsible to him.'' The following cases announce the same doctrine: *Colby* v. *City of Portland,* 85 Or. 359, 166 Pac. 537; *Skerry* v. *Rich,* 228 Mass. 462, 117 N. E. 824; *Lunsford* v. *Johnson,* 132 Tenn. 615, 179 S. W. 151; 1 Thompson's Commentaries on the Law of Negligence, sec. 601. The rule of [3] the maxim *''respondeat superior''* applies only to the personal relation of master and servant, or principal and agent. The maxim is based upon the principle ''that he who expects to derive advantage from an act which is done by another for him must answer for an injury which a third party may sustain.'' (34 Cyc. 1673; 35 Cyc. 972; *Donovan* v. *McAlpin,* 85 N. Y. 185, 39 Am. Rep. 649; *Stoddard* v. *Fiske,* 35 Cal. App. 607, 170 Pac. 663.)

If these defendants can be held liable at all, they are to be held for their own negligence as public officers, not for that of Neilson who was not employed by them, but by the county, and before they, as officers, can be charged with negligence, they must have had notice of the dangerous condition created by the operations of Neilson. There is no suggestion in the evidence that they had actual notice, nor for what length of time it had existed, nor that they had ordered him to do the work in the way in which he was doing it. Indeed, it does not appear that Neilson had omitted to give ample warning

to the public by maintaining a light or barrier at any time prior to the night of the accident when his active operations had been temporarily suspended. The evidence in this behalf was wholly insufficient to require its submission to the jury, and the motion of these defendants for a nonsuit should have been sustained.

It is argued that the court erred in refusing to submit one [4] instruction requested by the defendants. It does not appear from the record, however, that counsel reserved an exception to the action of the court in refusing to submit it. This court may not, therefore, review it. (Sec. 9349, Rev. Codes 1921.) It should be noted that this case was tried in November, 1919, before the amendment of section 6784, Revised Codes of 1907, as appears in the latter part of section 9387, Revised Codes of 1921.

As to the defendant Neilson, the judgment and order are affirmed. As to the defendants Berthelote, Crossan and Watters, the judgment and order are reversed, and the district court is directed to render judgment dismissing the action.

MR. JUSTICE GALEN concurs.

MR. JUSTICE COOPER: I concur in what is said by MR. CHIEF JUSTICE BRANTLY, but do not concur in the dismissal of the action as to defendants Berthelote, Crossan and Watters.

MR. JUSTICE HOLLOWAY: I concur in the result reached, but do not subscribe to all that is said in the opinion. I adhere to the rule announced in my dissenting opinion in *Smith* v. *Zimmer,* above.