ROBERT HURLY, Administrator of the Estate of Maggie Lonethunder, Deceased, Plaintiff and Respondent, v. MIKE TYMOFICHUK, Defendent and Appellant.

No. 10119.

Submitted January 12, 1961. Decided February 9, 1961.

359 P.2d 378

Leonard H. Langen, Glasgow, M. J. Traynor, Scobey, Leonard H. Langen argued orally, for appellant.

John Marriott Kline, Glasgow, Vernon Hoven, Plentywood, John Marriott Kline argued orally for respondent.

MR. JUSTICE ANGSTMAN delivered the Opinion of the Court.

Plaintiff received a verdict against defendant in the sum of $5,000. Judgment was entered accordingly. Defendant's motion for a new trial was denied and he appealed from the judgment. The law suit arose out of an automobile accident which occurred on August 25, 1956, from the collision of two automobiles. The accident happened about thirty-three miles south of Scobey, Montana, on Highway 13, at a little after sunset.

Defendant was driving a 1952 Plymouth sedan. Maggie Lonethunder had been riding in a pickup truck owned and driven by Henry Redstar. Thirteen Indians, of which Maggie Lonethunder was one, had left the White Bear Indian Reservation in Canada on August 24 in the pickup truck. They were enroute to Wolf Point to attend a celebration. The back of the truck was loaded with tents, bedding, baggage, tent poles and food. They camped out the first night in Canada. On the second day they entered the United States, driving on through into Scobey just a little before sunset. They then proceeded southward toward Wolf Point. When they arrived at Simms Springs, which is approximately thirty-two miles south of Scobey, the pickup truck stalled. After attempting to start it, without success, the Indians pushed it for about a mile, part of which was upgrade and over a hill and then down to the bottom of the hill, where it stopped. Maggie Lonethunder and her husband were among those pushing the truck. When the truck came to a stop, Maggie Lonethunder and her husband were both behind the pickup truck. While in this position, the

defendant drove his car into and against Maggie Lonethunder and against the pickup truck, which resulted in her death.

The evidence is not clear as to whether it was light or dark at the time, but there was evidence that the sky was red in the west. Defendant claimed it was dark. All parties agreed that others using the highway, as well as defendant, had their lights turned on at and prior to the time of the impact.

The amended complaint consists of two causes of action. The first is based upon the negligence of the defendant in driving his car at an excessive and improper speed, failure to keep the automobile under control, to maintain a lookout, and to drive in a careful and prudent manner.

The second count was based upon the doctrine of last clear chance, in which it is alleged that Maggie Lonethunder occupied a position of peril and that the defendant discovered her perilous position and by the exercise of ordinary care could have avoided the collision.

The answer consisted of a general denial of the acts of negligence alleged in the complaint and set up affirmative defenses. The first of these alleged that the contributory negligence of Maggie Lonethunder was the proximate cause of her own injuries and death. The second ground of defense is that Henry Redstar and the deceased were engaged in a joint or common enterprise; that the negligence of Redstar is imputable to the decedent; and that his negligence consisted of operating the pickup on a public highway at night, with improper and unlawful lights, unlawful parking of the pickup on a public highway at nighttime and operating the pickup truck on the highway while the same was in an unsafe condition, and the failure to keep a proper lookout.

The third affirmative defense alleged that Sam Lonethunder, the deceased's husband, is the beneficiary of the decedent's estate and whatever injuries and damages were sustained by the decedent's estate were caused by his negligence, in that he allowed his wife to be in or near the pickup, stalled on the

public highway, at nighttime, when it was in an unsafe condition, with improper lights and thereby contributing proximately to the accident. The reply put in issue the affirmative allegations of the answer.

The first question presented by the appeal is whether the court erred in denying the defendant's motion for dismissal, and nonsuit, and motion for directed verdict. It is defendant's contention, in brief, that the evidence was insufficient to sustain the allegations of negligence in any of the particulars alleged, and that on the contrary, it affirmatively shows the contributory negligence of decedent to have been the proximate cause of her injuries and death, and that the proof shows that decedent's death was instantaneous and hence, because thereof there is no cause of action in the plaintiff.

Defendant contends that this case is ruled by Burns v. Fisher, 132 Mont. 26, 313 P.2d 1044, 67 A.L.R.2d 1, wherein this court held that the lower court was right in sustaining the motion for nonsuit for want of proof of negligence on the part of defendant, and because the evidence showed as a matter of law that decedent came to his death by his own negligence. There are facts in the Burns case which make it different from this case. In that case, the undisputed facts were that the accident occurred at about 1:30 or 2:00 o'clock in the morning. It was admittedly dark. In the case at bar, the accident happened shortly after sunset and there was evidence that the sky was red in the west. While deceased and the others were pushing the truck, cars passing had only their parking lights on. It was twilight. In the Burns case the driver of the car approaching from the rear was blinded by lights of oncoming cars. In the instant case, there were cars approaching from the opposite direction in which defendant was traveling and those cars had their lights on, but defendant did not testify that he was blinded by the lights of the oncoming cars as in the Burns case.

Defendant in the instant case testified as follows:

54

"Q. Now, would you tell the Jury what happened now with reference to other vehicles when you reached this point here, about the top of the hill? A. Well I met four approaching cars, and I dimmed the lights and the first car dimmed also and the three other ones had the bright lights shining in my eyes and I had to drive my car— they kinda drove in the center of the road and I had to keep to my right and watch forward.

"Q. And then you went on down around the curve and down the hill? A. I went down around the curve, yes.

"Q. Down the hill? A. Down the hill, yes.

"Q. And then what happened? A. Well around the curve there I saw an object, a dark object in front of my eyes and I applied the brakes and my car skidded forward and struck a pickup.

"Q. Struck a pickup truck? A. Yes."

It will be noted that defendant's testimony regarding the lights related to the circumstances at the top of the hill. The accident happened at the bottom of the hill, and there is nothing to indicate that had defendant kept a proper lookout he could not have seen the truck on the highway and the decedent standing behind it wearing a white scarf or something white around her neck as the record shows was the case.

Here the record shows that in daylight there was clear visibility for about 500 feet from the point of impact to the north, being the direction from which defendant was approaching. Defendant testified that he was driving from 45 to 50 miles per hour when the accident occurred. The evidence shows that a car traveling at 50 miles per hour could stop within 186 feet and at 60 miles per hour could stop within 237 feet. Likewise, the evidence shows that there were skid marks a distance of 60 feet before the truck was hit, hence, defendant was at least that distance from the truck when he saw it and yet apparently made no effort to turn to the left to avoid hitting it.

■ It was for the jury to say whether defendant, in the exercise of proper care saw or should have seen the truck and the decedent in time to have avoided striking her by either stopping or turning to the left and passing in the usual way.

The case is more nearly comparable to those of Fulton v. Chouteau County Farmers' Co., 98 Mont. 48, 37 P.2d 1025, and Moore v. Jacobsen, 127 Mont. 341, 263 P.2d 713, than to the Burns v. Fisher case, supra.

■ Even though the jury were to find that the decedent was guilty of negligence, it would not bar recovery unless it should further find that such negligence was the proximate cause of her injuries and death. As above noted, the evidence made out a case for the jury and the court properly denied the motions for nonsuit and directed verdict.

■ The next point urged by defendant is that the court erred in holding as a matter of law that the death of decedent was not instantaneous. The evidence bearing on this point is the following:

After the accident, decedent's husband put a pillow under his wife's head as she was lying on the ground. He talked to her. She told him she was badly hurt and asked for a cigarette. He gave her a cigarette which she was smoking when she passed away. Dr. Knapp examined the body at about midnight but did not open the body. He supposed that her lungs were collapsed and hemorrhaging. He said that she could have lived five minutes, but that death was almost instantaneous. This evidence was sufficient to justify the court's action in refusing to submit the issue to the jury.

Defendant next complains of the action of the court in admitting evidence, over his objection, that whiskey and beer were found a few days after the accident at the side of the road near the scene of the accident. The highway patrolman who found the liquor testified that he did not know where the liquor came from. He testified that in his opinion defendant

was not drunk and had been drinking but very little and was in fact sober.

Defendant testified that all he had to drink was a bottle of beer before leaving home but had nothing to drink in town.

■ We fail to see how the admission of the testimony regarding the liquor found at or near the scene of the accident could have prejudiced defendant. There was nothing to indicate that it was brought there by the defendant. The jury was no more warranted in inferring that it was placed there by defendant than to infer that it was placed there by someone riding in the truck. Even though the evidence should have been excluded it does not appear to have prejudiced defendant.

The next point urged by defendant is that the court erred in instructing the jury, over his objection, to the effect that the negligence of Henry Redstar, if any, may not be imputed to plaintiff, and in refusing to give his offered instruction on joint enterprise.

■■ The evidence shows that all of the occupants of the truck chipped in to pay the expenses of the trip. Henry Redstar owned the truck, did the driving, took care of the money, and bought the gas and food. They were going to Wolf Point to attend a celebration. No one told Henry Redstar what roads to go on. The right to be heard on the control and management of the truck, in question here, determines whether there was a community of interest on a joint undertaking so that the negligence of one could be imputed to another. The court was right in ruling as a matter of law that there was no such joint undertaking. Compare cases cited in the annotation appearing in 48 A.L.R. 1080 et seq., and in 80 A.L.R. 312.

Other contentions made by defendant have been considered, but we find no prejudicial or reversible error in the record.

The judgment is accordingly affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES ADAIR and JOHN C. HARRISON concur.

MR. JUSTICE CASTLES specially concurring:

I concur in the result, but not with all that is said.