FLOYD SUMNER, Individually and as Administrator of the Estate of Belinda Christian Sumner, Deceased, Plaintiff and Cross-Defendant and Respondents, *v.* ALBERT JAMES AMACHER and LOUISE R. RANKIN, Executrix of the Last Will and Testament of Wellington D. Rankin, Deceased, Defendants and Cross-Claimants and Appellants.

No. 11319.
Submitted January 8, 1968. Decided February 7, 1968.
Rehearing denied March 8, 1968.
437 P.2d 630.

546

Rankin & Acher, Small & Cummins and Carl Hatch, Louise Rankin Galt and Arthur P. Acher (argued), Robert T. Cummins (argued), Helena, for appellants.

Berger, Anderson & Sinclair, Richard W. Anderson (argued), Billings, Hughes & Bennett and Leon Lysaght, Helena, John V. Potter (argued), White Sulphur Springs, for respondents.

MR. JUSTICE HASWELL delivered the Opinion of the Court.

This is an appeal from a judgment entered on a jury verdict in the district court of Meagher County awarding damages of $37,000 to a passenger in an automobile involved in a two-car collision against the driver of the other vehicle and his employer.

In reality, this case consists of two separate actions involving numerous claims, counter-claims and defenses by various parties. All were consolidated for trial. As all claims and counter-claims except the one above-mentioned were denied by jury verdict and judgment, and as all briefs and arguments upon this appeal are directed at this one award, this opinion will treat this case as involving this one claim and award only.

The accident forming the basis of this case occurred in the early afternoon of August 27, 1965, about six miles south of White Sulphur Springs on a straight, essentially level, asphalt public highway designated both as Highway 89 and as Highway No. 12. This highway runs generally in a north-south direction. As one proceeds north along this highway in the

general area of the accident scene, there is a solid yellow line in the north-bound lane of traffic designating a "no passing" zone for north-bound traffic for a distance of 338 feet to a highway bridge over Catlin Creek. In this "no passing" zone a private road from the Catlin Ranch to the west forms a "T" junction with the highway. The asphalt portion of the highway at the accident scene is approximately 20 feet wide.

At the time and place where the accident occurred its was a hot summer day, the sun was shining, visibility was unlimited, and the road surface was dry. Defendant Albert James Amacher was driving northerly along the above-mentioned highway in a 1965 Ford pickup owned by his employer, defendant Wellington D. Rankin, and was carrying Gary Meeks, another employee, as a passenger. Defendant Amacher, who was acting in the course and scope of his employment by defendant Rankin, was proceeding to the Catlin Ranch to deliver some commissary items, supplies and equipment which were loaded in the box of the pickup. As he approached the point where he would make a left turn off the highway onto the private road leading to the Catlin Ranch, another vehicle was overtaking him from the rear.

This other vehicle was a 1964 Buick Special driven by Belinda Sumner, and carrying her husband, plaintiff Floyd Sumner, as a front seat passenger. This Buick was jointly owned by the Sumners who were enroute from their home in Livingston to Great Falls to enable plaintiff Floyd Sumner, whose occupation was the installation of carpet and linoleum, to attend a business meeting to learn new installation methods on heavy grade linoleum and to enable his wife and him to visit her relatives and friends in the Great Falls area. They had stopped on the outskirts of Livingston and purchased hamburgers, had purchased forty cents worth of beer in Wilsall, and had eaten the hamburgers and drunk part of the beer prior to the accident.

The left front end of the Buick struck the rear end of the

Ford pickup somewhere on the highway between the beginning of the "no passing" zone and the junction of the private road leading to the Catlin Ranch, resulting in personal injuries to the plaintiff Floyd Sumner.

Beyond these brief facts, the testimony and evidence relating to the accident involved in this appeal are in utter and absolute conflict.

Prior to suit, Belinda Sumner died as a result of injuries received in this accident. After suit was filed, but before trial, defendant Wellington D. Rankin died and his executrix, Louise R. Rankin, was substituted. Trial was had by jury before the Honorable Nat Allen, District Judge. At the conclusion of plaintiff's case in chief, and again at the conclusion of all of the evidence, both defendants separately moved for directed verdicts, which motions were denied. The jury returned a verdict for plaintiff against both defendants in the sum of $37,000 and after judgment was entered thereon, each defendant separately filed a motion for a new trial and a motion to set aside the verdict and judgment. All of these motions likewise were denied. This appeal by both defendants from the judgment and order denying new trial followed.

During the pendency of this appeal, but before final argument, plaintiff moved to dismiss this appeal based upon procedural grounds not involving the merits.

Defendants present three issues for review: (1) the district court erred in denying the motions of the defendants for directed verdicts; (2) the district court erred in denying defendants' motions for a new trial; and (3) the district court erred in refusing to set aside the verdict and judgment. Although these are quite properly stated as the ultimate legal issues to be decided upon this appeal, the fundamental issues controlling the answers to these questions are found in defendants' briefs and oral argument. The basic thrust of defendants' argument is two-fold: (1) that Belinda Sumner's negligence was the sole proximate cause of the accident; and

(2) that the negligence of Belinda Sumner is imputable to plaintiff Floyd Sumner and bars any recovery by him. If either contention is answered affirmatively, all three legal issues presented for review must be answered favorably to defendants; if both are answered in the negative, plaintiff must prevail on all three legal issues. Accordingly, this opinion will treat the two underlying contentions of defendants set forth above as the real issues presented for review herein.

As to the first issue, defendants contend that Belinda Sumner's negligence was the sole proximate cause of the accident because (1) she was clearly negligent, (2) Amacher was not negligent, and (3) the accident occurred as the result of her negligence. Without belaboring the point, Belinda Sumner's negligence is clearly established by credible testimony and physical evidence indicating that she was attempting to pass the pickup driven by Amacher at a speed of 65 to 70 miles an hour in a "no passing" zone, clearly marked as such, in violation of statute. The jury specifically found her guilty of contributory negligence in their verdict. Under these circumstances her negligence was neither argued nor arguable.

Defendants further assert that Amacher was not negligent because he complied with the law in all particulars. They contend that Amacher signaled for a left turn off the highway by turning on his blinking left-turn indicator lights at least 150 feet before reaching the Catlin Ranch turn-off; that he applied his brakes actuating his rear brake light simultaneously with his turn indicator light; that he had slowed to 20 miles per hour or less at the time of impact; that he was wholly in the north-bound lane of traffic and had not crossed the centerline of the highway when he was struck from the rear; that even if he had started his turn he was not turned at a 45 degree angle blocking the passing lane; and in any event he was not negligent in turning as he did because he had a perfect right to do so and complied with the law in all respects.

Plaintiff, on the other hand, argues that the driver of the

car in which plaintiff was riding honked her horn and commenced to pass; that suddenly and without warning, Amacher made a left turn without signaling until starting to turn; that this blocked the passing lane; that this made it necessary for the driver of the car in which he was riding to swerve back into the north-bound lane; and that in so doing she struck the rear of the Amacher pickup because there was not sufficient time to turn sharply enough to clear it from behind.

At the outset it should be observed that there is a sharp conflict in the evidence as to just how this accident occurred. Without reviewing the conflicting evidence in detail, it is sufficient to say that conflicts exist on the following major points: (1) the point of impact between the two vehicles, both with respect to the centerline of the highway and the location of the turnoff; (2) the angle of impact between the two vehicles; (3) whether Belinda Sumner honked her horn before attempting to pass; and (4) whether Amacher signalled for a left turn off the highway with his directional signal lights sufficiently in advance of his left turn. On the basis of conflicting evidence on all these points the jury specifically found Amacher guilty of negligence proximately causing the collision. Under such circumstances, our review is confined to determining whether there is substantial credible evidence to support this finding by the jury. (Greenup v. Community Transit Co., 145 Mont. 39, 399 P.2d 418; Wyant v. Dunn, 140 Mont. 181, 368 P.2d 917.)

After careful review of the evidence we hold that there is substantial credible evidence that Amacher was negligent, proximately causing the accident, in that he failed to signal for a left turn off the highway sufficiently in advance to make the turn with reasonable safety as required by statute, knowing of the presence of traffic behind him.

Section 32-2167, R.C.M.1947, provides, in material parts, as follows:

"(a)  No person shall * * * turn a vehicle to enter a private road * * * unless and until such movement can be made with reasonable safety.

"(b)  A signal of intention to turn * * * left when required shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning."

There is a direct testimonial conflict as to whether the left turn indicator light on the Amacher pickup was on during the last 100 feet prior to turning.  Defendant Amacher testified that the light was on for "500 feet or a little better" before his pickup was struck, and that he had not begun to turn across the centerline at the time of impact; plaintiff Floyd Sumner testified that the directional light did not go on until the pickup started its turn.  Three other witnesses testified as to when the left turn signal light on the Amacher pickup went on, but none of these witnesses testified in terms of the distance the pickup traveled with the turn indicator light on.  There is also a sharp testimonial conflict by eyewitnesses concerning whether the pickup had started its left turn at the time of impact, and some dispute as to interpretation of the physical facts observed at the accident scene.  Suffice it to say, that the investigating highway patrolman fixed the point of impact as being west of and across the centerline of the highway, partially in the southbound lane of traffic with the Amacher pickup at an angle to the centerline of the highway.  Such determination was largely based on physical evidence observed at the scene, principally skid marks and gouge marks on the highway in conjunction with the observable damage to the two vehicles involved.  In our view there is sufficient credible evidence from the physical facts, the highway patrolman's testimony, and plaintiff's testimony to sustain a finding of violation of subsection (b) quoted above.

But entirely aside from this, there is sufficient credible evidence that Amacher violated subsection (a) of this statute forbidding a driver from turning his vehicle to enter a private

road unless and until such turn can be made with reasonable safety.

According to Amacher's own testimony, just before he was getting ready to make his turn he observed through his rear view mirror that the Sumner Buick was 40 to 50 feet behind him, straddling the centerline, and travelling at a higher speed than he was. Although Amacher denies it, there is sufficient credible evidence indicated previously that he started his left turn and was hit. Under such circumstances can it be said that Amacher's turn could be made with reasonable safety? Asking the question indicates the statutory violation.

As to the proximate cause of the accident, the following testimony of the investigating highway patrolman sums it up:

"Q. Well, Jim, down to the nub of the whole thing here, based on your investigation and photographs and inspection, your findings and your notations as a Highway Patrolman do you have an opinion as to the cause of this accident? A. Through my investigation and interrogation and interviews with the witnesses, whatever you want to call it, and the evidence found at the scene, the Sumner vehicle had pulled out to pass the Amacher vehicle, Mr. Amacher, it had to be one of two things that caused the accident. When she got out in the lane over the yellow line, there was either approaching hazardous traffic that was too close to allow her to pass, *which Mr. Amacher said did not exist;* or Mr. Amacher started to turn, make a left turn in front of her. And from Mr. Amacher's statement and from what I had at the scene and the skid marks, the gouge marks, this is the opinion that I formed." (Emphasis supplied.)

The proximate cause of an accident is any direct and immediate cause without which the accident would not have occurred. (See McNair v. Berger, 92 Mont. 441, 15 P.2d 834, and cases cited therein; MJIG No. 15.00). But for Amacher's unlawful left turn, the accident would not have happened ir-

respective of any violation or negligence on the part of the driver of the Sumner automobile.

■ For the foregoing reasons, we hold that there is sufficient credible evidence that Belinda Sumner's negligence was not the sole proximate cause of the accident and that the jury's finding on this point will not be disturbed on this appeal.

The second basic issue involved in this case is whether or not the negligence of Belinda Sumner is imputed to her husband to bar his recovery herein. Belinda Sumner was clearly negligent in the instant case as heretofore discussed. Defendants seek to impute the negligence of the driver to the passenger based on the existence of a joint venture at the time of the accident. Plaintiff, on the other hand, argues that no joint venture existed. This question was submitted to the jury who specifically found that no joint venture existed between Belinda Sumner and her husband, plaintiff Floyd Sumner.

The facts bearing upon the existence or nonexistence of a joint venture come almost entirely from the mouth of the plaintiff, are basically undisputed, and are subject to slight differences in interpretation. Defendants' argument, however, is not grounded on interpretation of the facts. The gist of defendants' argument is that the facts establish the existence of a joint venture as a matter of law.

■ We disagree. We hold that a joint venture was not established as a matter of law because (1) there was no evidence of a common pecuniary interest in the purpose of the trip; (2) the facts do not establish a right of control of the automobile at the time of the accident in the husband-passenger as a matter of law.

The essential facts bearing upon joint venture in the instant case are these: (1) husband-wife relationship between passenger and driver; (2) co-ownership of the automobile between passenger and driver; (3) presence of both co-owners in automobile at the time of the accident; (4) common destination on the trip; (5) both a dual and common purpose for the trip, the

wife's purpose being an entirely social one of visiting her relatives and friends, while the husband's purpose was to attend a business meeting and later to visit the same relatives and friends his wife would be visiting; (6) non-participation by the wife in her husband's business operation; (7) each was to drive part of the way on the trip; (8) the automobile was for the wife's use and the husband seldom drove it; (9) their house was also held in co-ownership; (10) when the husband shouted a warning momentarily before impact, he expected his wife to follow it; and (11) the wife stopping for beer at Wilsall in response to her husband's request. The question for decision is whether this totality of facts established a joint venture as a matter of law.

The elements which are essential to a joint venture are commonly stated to be: (1) an agreement, express or implied among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control. (Restatement, Torts, 2d § 491, Comment (c)). These same elements, phrased in slightly different language, have been held to be essential in Montana (Rae v. Cameron, 112 Mont. 159, 114 P.2d 1060), except in automobile accident cases where the requirement of a community of pecuniary interest in the common purpose of the trip has not been stated to be a requirement (see Laird v. Berthelote, 63 Mont. 122, 206 P. 445; Hurly v. Tymofichuk, 139 Mont. 50, 359 P.2d 378), although none of the Montana cases to date have directly ruled on this point. In other states there is a definite split of authority as to the requirement of community of pecuniary interest in joint venture automobile cases, the older cases holding it unnecessary (see Hurley v. City of Spokane, 126 Wash. 213, 217 P. 1004; Archer v. Chicago, M. St. P. & P. Ry. Co., 215 Wis. 509, 255 N.W. 67, 95 A.L.R. 851; Smith v. Wells, 326 Mo. 525, 31 S.W.2d 1014; Howard v. Zimmerman, 120 Kan. 77, 242

P. 131), but the modern trend requiring it. (See Edlebeck v. Hooten, 20 Wis.2d 83, 121 N.W.2d 240; Powers v. State, 178 Md. 23, 11 A.2d 909; Robison v. Oregon-Washington Railway and Nav. Co., 90 Or. 490, 176 P. 594).

█ In our view the cases requiring a community of pecuniary interest in the common purpose of the trip in order to impute negligence between spouses based on joint venture in automobile accident cases are better reasoned. To impute negligence between spouses based on some abstract and theoretical right of control found in the marital relationship, co-ownership of the automobile, a common purpose for the trip, sharing driving duties, making a stop along the route at the request of her husband, and other normal marital conduct between husband and wife in their social relationship with each other ignores the realities of modern life.

There is no rational basis for applying a different set of rules and requirements for a joint venture in automobile accident cases than those required in any other joint venture. As a joint venture in the usual sense is strictly a commercial or business venture for mutual financial gain, there is no logic in making it something other than that in automobile accident cases. As the Wisconsin Court said in Edlebeck v. Hooten, supra, in an automobile accident case involving the question of imputed negligence on the basis of joint venture: "A venture to constitute a joint venture must be for profit in a financial or commercial sense."

█ Additionally, the existence of the marital relationship between driver and passenger, standing alone, is insufficient for the imputation of the negligence of the driver to the passenger (section 36-109, R.C.M.1947; Laird v. Berthelote, supra), and in the absence of statute imputing negligence on the basis of joint ownership, neither is co-ownership of the automobile by both spouses in itself sufficient to impute the negligence of driver to passenger (Mooneyham v. Kays (Wyo. 1965), 405 P.2d 267; Edwards v. Harris (Wyo. 1964), 397 P.2d

87; Blevins v. Phillips (1959), 218 Or. 121, 343 P.2d 1110; Parker v. McCartney, 216 Or. 283, 338 P.2d 371; Cook v. Faria, 74 Nev. 262, 328 P.2d 568; Sherman v. Korff, 353 Mich. 387, 91 N.W.2d 485; Burdick v. Bongard, 256 Minn. 24, 96 N.W.2d 868). Neither is a common purpose of the trip or the sharing of driving duties (Burdick v. Bongard, supra; Schmid v. Eslick, 181 Kan. 997, 317 P.2d 459), standing alone or together, sufficient in themselves. Nor is stopping along the route at the request of the passenger. (Anthony v. Kiefner, 96 Kan. 194, 150 P. 524, L.R.A.1915F, 876). Each of these facts is some evidence of the right of control of the automobile. This right of control of the automobile is one of the essential elements of a joint venture upon which imputed negligence is grounded. The right of control is generally a factual inquiry and thus a jury question. In our view this is the case here, and all of the above facts taken collectively do not establish a joint venture as matter of law.

Accordingly, Judge Allen was correct in denying defendants' separate motions for directed verdicts, motions for a new trial and motions to set aside the verdict and judgment.

As we have disposed of this appeal on the merits, no purpose would be served in ruling on plaintiff's motion to dismiss this appeal on procedural grounds.

The judgment of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR, CASTLES and JOHN C. HARRISON concur.