GEORGE WATERS, Administrator, Appellant, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY et al., Appellees.

**RAILROADS:** Crossing Accident—Conclusive Contributory Negligence. One who, in full possession of good health, sight, and hearing, on a clear day, and without distracting circumstances, drives upon a well known railway crossing, and is killed by a negligently operated engine, is *conclusively* guilty of contributory negligence, even though the surviving occupant of the vehicle testifies that they did look for an approaching train at all times after passing a point 75 feet from the crossing, when the record reveals the fact that, for said entire distance, the view of the track for at least 50 rods was unobstructed.

**NEGLIGENCE:** ''Last Chance'' Rule—Nonapplicability. Principle recognized that the doctrine of the "last clear chance" has ap-

plication only in those cases where the injured person is *actually* discovered in a position of peril at a time when reasonable care might save him from injury.

*Appeal from Clayton District Court.*—A. N. HOBSON, Judge.

JULY 17, 1920.

REHEARING DENIED OCTOBER 23, 1920.

ACTION in the name of the administrator of the estate of Edward Waters for damages.. While attempting to cross defendant's track at a highway crossing, the automobile in which deceased was riding, was struck by one of its engines, killing him instantly, severely injuring his wife, and completely demolishing his automobile. The court, at the conclusion of all the testimony, upon motion of counsel for defendant, directed the jury to return a verdict in its favor. There was a judgment on the verdict for costs, and plaintiff appeals.—*Affirmed.*

*Burling & Burling* and *William S. Hart,* for appellant.

*Hughes, Sutherland & O'Brien* and *D. D. Murphy & Son,* for appellees.

STEVENS, J.—I.   Defendant operates a line of railway westward from Postville, Iowa, which is paralleled by a public highway, referred to in the evidence as "The Military Road."   This highway lies south of defendant's track for the entire distance between Postville and the Kahle crossing, except for a distance of 80 rods. The last mile or mile and a half is on the south side.   Shortly after noon on July 28, 1916, Edward Waters and wife, who were riding in an Overland automobile, were struck at the Kahle crossing by one of defendant's engines going west.   Mr. Waters was killed instantly, and

1. RAILROADS :
crossing
accident :
conclusive
contributory
negligence.

Mrs. Waters severely injured. The automobile, which was thrown a distance of 100 feet, was completely demolished.

The negligence charged in plaintiff's petition is that the engine was being operated at a high and dangerous rate of speed; that no signal or alarm of its approach was sounded; and that the servants in charge thereof were negligent in not reducing the speed or stopping the engine before reaching the point of collision. There were two lines of telephone poles on the north side of the highway, and a line of telegraph poles inside defendant's right of way fence. For practically the entire distance traveled by Mr. and Mrs. Waters, they were in plain view of the railroad track; but it is claimed that, at the corner where they turned north from the Military Road to cross the track at the point where the accident occurred, their view to the east, and of the approaching engine, was obstructed by a dense growth of tall weeds, telephone poles, and a sign-board 6 to 8 feet above the ground, on one of the telephone poles. Photographs introduced in evidence by both parties indicate the presence of weeds or grass at the point in question, and other testimony tends to show that some of them were 6 feet high. The right of way fence is composed of wires fastened to posts; but, from the corner where the highway turns north to the track, there is a board nailed near the top of the posts, below which are at least three strings of wire. One witness testified that the board is a common fence board, and another, that he thought it a 2 by 4. For practically all of the distance, the railroad track is elevated above the public highway; and, at the point of the accident, the elevation above the highway is from 1½ to 2 feet. The day on which the accident occurred was warm, with very little wind. Mr. Waters was 50 years of age, in good health, with good eyesight, and a sound sense of hearing. This was also true of Mrs. Waters. A crew of one of defendant's trains was returning on an engine from Postville, where they had gone for water, leaving the train at Centralia, the first station west. The occupants of the engine, who were the engineer, fireman, and con-

ductor, all testified that the bell was rung and whistle sounded at each of the crossings west of Postville, and that the speed of the engine did not exceed 20 or 25 miles per hour. Other witnesses who observed its movement testified that their attention was particularly attracted to its rapid speed, and that they observed that no warning was given at the crossings west of Postville. Mrs. Waters testified that she and her husband were listening, and did not hear the bell or whistle. The only evidence as to the speed of the engine, except that of the trainmen, is that of the witnesses, some of whom observed it from a distance, and who testified that it was running very fast, and what may be inferred from the effect of the collision. The automobile was thrown about 100 feet, Mr. Waters about 85 feet, and Mrs. Waters about 70 feet. All were found on the right of way. One witness, who was 60 rods west and 100 rods north of the crossing, testified that the engine stopped at a culvert which, subsequent measurements showed, was 447 feet west of the crossing. The engineer testified that the engine could be stopped at 50 miles per hour in about 450 feet. Defendant's witnesses do not designate the exact place at which the engine was brought to a standstill, but they estimate it at about the distance required to stop an engine traveling at 25 miles per hour. There is ample evidence, therefore, from which the jury might have found that the speed of the engine was somewhere between 25 and 50 miles per hour, and that the customary warnings of the approach of the engine were not given at the crossing. It is, however, contended by counsel for appellee that the occupants of the automobile are conclusively shown to have been guilty of contributory negligence. This is the principal question for our decision.

Many authorities are cited by counsel upon both sides: but the rules are familiar, and we do not deem an extended review necessary, in disposing of same. As stated, numerous photographs, taken shortly after the accident on behalf of both plaintiff and defendant, apparently show the situation and condition with more or less certainty,

although some of the photographs manifestly exaggerate the relative importance of certain points involved in the evidence. All of the photographs of the right of way fence show that the view is wholly unobstructed from the first post east of the corner to the crossing, except so far as affected by the board nailed at or near the top of the posts. In most of the photographs, the posts and top wire of the right of way fence are clearly visible from the corner east for several rods. At one point, looking nearly due east from the first post east of the corner outside of the right of way, the view of an approaching train from the position in which the camera was held is practically obstructed. An automobile traveling at 18 miles per hour would be but an instant in passing this point, after which, until the crossing was reached, the view to the east down the track was clear and unobstructed, for a distance of approximately 60 rods. The exact distance from the corner post to the crossing is not shown, but we gather from the record that it is approximately 50 feet. Other photographs indicate that the view of an approaching train, at the corner where the highway turns to go toward the crossing, would be interfered with little, if any, by the weeds, poles, and signboard.

Mrs. Waters, who was sitting on the left side of the seat, was driving the automobile. The distance from the point in the Military Highway from which the travel turns to go north to the Kahle crossing is about 75 feet, and the testimony tends to show that the right track is somewhat lower at the corner than the left track. No one saw the accident, but two or three witnesses testified that they observed the approach of the engine from the east for a distance of 60 or 70 rods; and one witness, that he saw the dust in the highway from the automobile, and remarked to his little son, who was with him, that it looked as if the engine and automobile were racing. He located them at this time near the crossing. Mrs. Waters testified that the automobile was moving about 18 or 20 miles per hour, and that she did not hear or see the engine at any time

until they·were on the crossing, when it "seemed to come right up in front of me out of the ground." A photograph, plaintiff's Exhibit 5, which was taken with the camera sitting right in the wagon track, pointing apparently slightly northeast, shows that the track could be seen practically all of the way from the second fence post east to the corner. Defendant's Exhibits Nos. 4 and 11 plainly reveal the board on the top of the post and two wires, the entire distance from the corner post, and a third wire, a part of the distance. The right of way had been recently mowed, but it is claimed that the weeds had not been all cut at the corner where they could not be reached by the mower. Mrs. Waters testified that, just as they turned the corner to go north, her husband stood up in the automobile, and looked out from under the cover toward the east, and said, "Everything is all right; go ahead." She further testified that they both continued to look toward the east and west, until they were struck by the engine. Both were familiar with the Military Highway, which continues on west on the south side of the track, and knew that a passenger train from the west was about due. Their attention was not distracted in any way, and, according to her testimony, they were driving at a moderate rate of speed. As stated, the track was clearly visible to the east up to the crossing, at every point of observation after passing the corner, for a distance of at least 50 rods; and a person having ordinary eyesight, looking in that direction, in the exercise of any reasonable degree of care, could not have failed to see the approaching engine. The physical facts make this practically impossible. It is true, as contended by counsel for appellant, that an engine detached from a train would not be as quickly discerned as a train; but, at most, the speed of the engine was but little more than twice that of the automobile; and, when the automobile turned the corner, the engine must have been within at least 150 feet of the crossing; and, had they looked in that direction, they must have seen it. At the time Mr. Waters stood up in the automobile and looked to the east, the engine could

not have been more than 200 or 250 feet east of the crossing. The case is not one where the traveler upon the highway listened for the crossing signal, and looked at a place where an approaching train could be seen, although, had he again looked, he might possibly have avoided the accident; but, in this case, the driver of the automobile testified, as stated, that her husband took unusual precautions at the corner to see if a train was approaching, and that they both continued to look both east and west, after they passed the obstruction at the corner, until they reached the crossing, but did not see the engine, which must have been in plain view. We are compelled, under the evidence, to reach the conclusion that decedent was guilty of such contributory negligence as to preclude recovery. *Anderson v. Dickinson*, 187 Iowa 572; *Beemer v. Chicago, R. I. & P. R. Co.*, 181 Iowa 642, and cases therein cited.

II.   The conductor testified that he noticed an automobile in the road, a short distance ahead of the engine, but did not observe it thereafter, until it was struck. He located the point at which he saw the automo-

2. NEGLIGENCE: "last chance" rule: non-applicability.

bile as west of the Snow fence. The Snow fence was east of the Meier crossing, which was 80 rods east of the Kahle crossing. When the conductor saw an automobile, if the one in question, it must have been nearer the scene of the accident than indicated by his answer; otherwise, the engine would have cleared the crossing before the automobile reached that point. Basing their case upon this testimony, counsel for appellant contends that plaintiff was entitled to go to the jury upon the doctrine of the "last clear chance." The witness further testified that he paid no attention to the automobile, after his attention was called to it in the highway. No evidence whatever was introduced from which the jury could infer that the automobile was seen by the men in charge of the engine at any time after it left the Military Road, which continues on west of the Kahle crossing on the south side of the track. We find nothing in the record to justify the application of

this doctrine to this case. It is, as conceded by counsel, not sufficient for the evidence to show only that the servants of defendant should have seen the peril of deceased and the other occupant of the car in time to have prevented the injury. *King v. Chicago, R. I. & P. R. Co.,* 185 Iowa 1227; *Papich v. Chicago, M. & St. P. R. Co.,* 183 Iowa 601.

It is our conclusion, from all of the evidence, that the court did not commit error in sustaining defendant's motion to direct a verdict in its favor. Regrettable as the accident is, we see no way by which the conclusion could reasonably be reached by a jury that, if deceased and Mrs. Waters looked to the east, as testified by her, they did not see the approaching engine in plenty of time, after appreciating their peril, to stop the automobile at a place of safety.—*Judgment affirmed.*

LADD, EVANS, and GAYNOR, JJ., concur.