ROBERTS, ADMINISTRATOR, APPELLANT, *v.* CHICAGO, MIL-
WAUKEE & ST. PAUL RY. CO. ET AL., RESPONDENTS.

(No. 5,225.)

(Submitted May 25, 1923.  Decided June 12, 1923.)

[216 Pac. 332.]

*Personal Injuries—Railway Crossing Accidents—Contributory
Negligence—Nonsuit—When Proper.*

Trial—Motion for Nonsuit—In Effect Demurrer to Evidence.
1.   A motion for a nonsuit is in effect a demurrer to the evidence,
and on interposition thereof every fact will be deemed proven which
the evidence tends to prove, and the evidence will be regarded in
light most favorable to plaintiff's case.

Personal Injuries—Presumption of Due Care—When Inapplicable.
2.   The presumption that a person takes ordinary care of his own
concerns is a disputable one and does not apply where the surround-
ing facts and circumstances show the contrary.

Same—Railroad Crossings—Duty of Traveler.
3.   The presence of a railroad track is of itself a warning of
danger, and a person approaching a railroad crossing must take all
reasonable precautions to assure himself by actual observation that
there is no danger from an approaching train, using ordinary care to
make his looking and listening reasonably effective, the failure of the
enginemen to give warning signals not relieving him from his duty
in that respect.

Same—Duty of Traveler to Make Vigilant Use of Senses—Effect of
Failure to Do so.
4.   Where there is a zone of safety within which a traveler on a
highway may by looking and listening ascertain the presence of an
oncoming train and with knowledge of its approach it is his duty to
do so, and if he then leaves the place of safety without having made
a vigilant use of his senses although the train was at a point within
his vision, he will be deemed to have seen it and proceeded regardless
of the danger or to have failed to make vigilant use of his senses,
and his negligence in that regard will be held to have been the
proximate cause of his injury from a collision irrespective of the
negligence of the trainmen.

Same—Contributory Negligence—Nonsuit.
5.   Where deceased was driving a horse and buggy, and when she
was thirty-two feet from the track, traveling two and one-half miles
per hour, the train was not more than 788 feet from the crossing
traveling sixty miles per hour and well within her vision, and she
then left the place of safety and was killed, *held,* that her negligence
was the proximate cause of her death precluding recovery notwith-

---

5.   Contributory negligence of traveler as excused by railroad's failure
to give statutory signals on approaching crossings, see note in 6 **Ann.
Cas.** 78.

standing the excessive speed of the train and the failure of the enginemen to give proper warning signals.

Appeal and Error—Evidence—Exclusion—Harmless Error. .
  6. Where evidence offered by plaintiff in a personal injury action in which a nonsuit was granted would not, if admitted, have changed the result, refusal to admit it was harmless.

*Appeal from District Court, Rosebud County; George A. Horkan, Judge.*

Action by O. H. Roberts, as administrator of the Estate of Anna E. Roberts, deceased, against the Chicago, Milwaukee & St. Paul Railway Company and another. From the judgment for defendants, plaintiff appeals. Affirmed.

*Mr. Geo. P. Jones, Messrs. Campbell & Corolan* and *Messrs. Enterline & Maley,* for Appellant, submitted a brief; *Messrs. McIntire & Murphy,* of Counsel; *Mr. Homer G. Murphy* argued the cause orally.

Under the evidence introduced the defendants stand convicted of actionable negligence. There was no positive evidence introduced tending to establish or prove that the deceased was not exercising ordinary care and prudence at the time of the collision which resulted in her death. The presumption under the laws of Montana is that she was exercising ordinary care for her safety at the time of the accident. (Rev. Codes 1921, sec. 10606, subsec. 4.) In the case at bar there was no eye-witness introduced who saw the accident. In most jurisdictions the rule is that, where there are no eye-witnesses to the death, the law will presume that deceased, acting on the instinct of self-preservation, was in the exercise of ordinary care at the time of the accident. (17 C. J. 1304; *Adams* v. *Iron Cliffs Co.,* 78 Mich. 271, 18 Am. St. Rep. 441, 44 N. W. 270; *Cameron* v. *Great Northern Ry. Co.,* 8 N. D. 124, 77 N. W. 1016; *Albrecht* v. *Morris,* 91 Neb. 442, 136 N. W. 48; *Nelson* v. *Northern Pac. Ry. Co.,* 119 Minn. 347, 138 N. W. 419; *Lewis* v. *Rio Grande Western Ry. Co.,* 40 Utah, 483, 123 Pac. 97; *Hugo* v. *Baltimore & O. R. Co.,* 238 Pa. St. 594, 86 Atl. 482.)

It is not contributory negligence as a matter of law for the driver of an automobile not to stop, look and listen before using a railroad crossing without regard to whether ordinary prudence would require such a course. (*Walters* v. *Chicago, M. & St. P. Ry. Co.,* 47 Mont. 501, 46 L. R. A. (n. s.) 702, 133 Pac. 357; *Mason* v. *Northern Pac. Ry. Co.,* 45 Mont. 474, 124 Pac. 271; *Sprague* v. *Northern Pac. Ry. Co.,* 40 Mont. 481, 107 Pac. 412; *Continental Improvement Co.* v. *Stead,* 95 U. S. 161, 24 L. Ed. 403 [see, also, Rose's U. S. Notes]; *Grand Trunk Ry. Co.* v. *Ives,* 144 U. S. 408, 36 L. Ed. 485, 12 Sup. Ct. Rep. 679.)

The general rule is that a person approaching a railroad crossing on a public highway need use only ordinary care to avoid injury, and that whether ordinary care was used by the traveler is generally a question for the jury. (*Walters* v. *Chicago, M. & Puget Sound Ry. Co., supra; Carr* v. *Pennsylvania R. R. Co.,* 225 N. Y. 44, 121 N. E. 473; *Allogi* v. *Southern Pac. Co.,* 37 Cal. App. 72, 173 Pac. 1117; *Swanson* v. *Puget Sound Elec. Ry. Co.,* 118 Wash. 4, 202 Pac. 264; *City of Elkins* v. *Western Maryland Ry. Co.,* 96 W. Va. 733, 1 A. L. R. 198, and annotations 203–218, 86 S. E. 162; *Sullivan* v. *Boston & M. R. R.* (Mass.), 136 N. E. 373; *Rebmann* v. *Delaware L. & W. R. Co.,* 275 Fed. 1009; *Jones* v. *Louisiana Western Ry. Co.* (Tex. Civ.), 243 S. W. 976; *Bilton* v. *Southern Pac. Ry. Co.,* 148 Cal. 449, 83 Pac. 443.)

Defendants contended in the trial court that the case at bar was controlled by the principles announced by this court in the following cases and induced the trial court to follow or apply the principles so announced: *Hunter* v. *Montana Central Ry. Co.,* 22 Mont. 525, 57 Pac. 140; *George* v. *Northern Pac. Ry. Co.,* 59 Mont. 162, 196 Pac. 869; *Keith* v. *Great Northern Ry. Co.,* 60 Mont. 505, 199 Pac. 718. These cases are reviewed and the distinction between them and a case like the one at bar is clearly pointed out by Mr. Justice Galen in the case of *Everett* v. *Hines,* 64 Mont. 244, 208 Pac. 1063, wherein the facts are somewhat similar although not

so strong, in our opinion, to support a recovery as in the case
at bar.

*Messrs. Murphy & Whitlock* and *Mr. I. S. Crawford,* for
Respondents, submitted a brief; *Mr. A. N. Whitlock* argued
the cause orally.

In determining whether or not the traveler has exercised
reasonable care the court must of necessity be governed by
the facts of the individual case, but the universal rule seems
to be that in considering those facts, the physical facts are
controlling, and if it appears from those facts, as brought
out by the plaintiff, that he must have seen the approaching
train had he exercised ordinary care, then there can be no
recovery. (*Turner* v. *Railway Co.,* 106 Kan. 509, 189 Pac. 376;
*Hammack* v. *Payne* (Mo. App.), 235 S. W. 467; *Olds* v. *Hines,*
95 Or. 580, 188 Pac. 716; *Baltimore & O. Ry. Co.* v. *Newton,*
137 Md. 21, 111 Atl. 481; *Kennedy* v. *Railway Co.,* 43 R. I. 358,
112 Atl. 429; *Fitch* v. *New York Central,* 233 N. Y. 356, 135
N. E. 598; *Yanaway* v. *Chicago & R. I. Ry.* (Iowa), 190
N. W. 2; *Twist* v. *Minneapolis & St. P. Ry.* (Wis.), 190 N. W.
449; *Reader* v. *Atchison, T. & S. F. Ry.* (Kan.), 210 Pac.
1112.)

The following recent cases from other jurisdictions clearly
show the rule to the effect that the physical facts control
in cases where there is no eye-witness as well as in other
cases: *Larrabee* v. *Railway Co.,* 173 Cal. 743, 161 Pac. 750;
*Miller* v. *Railway Co.,* 256 Pa. 142, 100 Atl. 654; *New York
Cent. Ry. Co.* v. *Leopold,* 73 Ind. App. 309, 127 N. E. 298;
*Kemmler* v. *Railway Co.,* 265 Pa. 212, 108 Atl. 592; *Walters*
v. *Chicago, M. & St. P. Ry. Co.,* 189 Iowa, 1097, 178 N. W.
534; *Hazlett* v. *Director-General,* 274 Pa. St. 433, 118 Atl.
367. These cases all lay down the same rule. The rule is
typically illustrated by the following language taken from
the case of *Smith* v. *McAdoo,* 266 Pa. St. 328, 109 Atl. 759:
"It is vain for anyone to assert a driver looked and listened,
if in spite of what his eyes and ears must have told him he

drove directly in front of a moving locomotive as did plaintiff's decedent in this case.''

MR. COMMISSIONER BENNETT prepared the opinion for the court.

This case is before us on an appeal from a judgment entered in favor of defendants, Chicago, Milwaukee & St. Paul Railway Company, a corporation, and Elmer Dunlap, and against O. H. Roberts as administrator of the estate of Anna E. Roberts, deceased, in an action wherein plaintiff sought to recover for the death of the decedent who was his wife, alleged to have been caused by defendants' negligence. At the close of plaintiff's case, on the trial of the cause, the court granted a motion for nonsuit, on which the judgment appealed from was entered.

Plaintiff's testimony discloses the following conditions: On the eleventh day of September, 1920, about midday, decedent and her niece were driving a horse and buggy from the home of decedent in Rosebud county, Montana, to a place in the same county called Bascom. At the village of Bascom was a station on the line of railway owned and operated by defendant company. The track extended in an easterly and westerly direction from this station. The highway on which decedent was traveling ran in a northerly and southerly direction across the tracks of the railroad company at a point approximately 450 feet west of the station-house. The trackage consisted of a main track and what was designated as a passing track. This passing track was 3,250 feet in length and was north of and distant from the main track ten feet four inches, the measurement being taken from the north rail of the main track to the south rail of the passing track. The highway crossed these tracks 1,600 feet west of the east end of the passing track and 1,650 feet east of the west end, and continued almost at right angles thereto and in a northerly direction across a third track which was designated as an industrial track. This track was forty-three feet distant from

the middle of the passing track. From a point a short distance across the industrial track the road continued in a general northeasterly direction. At some distance, which is not given, it passed a stockyard which was adjacent to the industrial track and between it and the road. The distance from the crossing where the industrial track left the main or passing track was not given. The testimony was that, on coming from the north, a person traveling toward the postoffice, which appears to have been on the highway a short distance south of the tracks, at a point ten feet south of the industrial track, the main line and the passing track were visible as far east of the crossing as the station house. This distance was 450 feet. Continuing from that point toward the crossing of the main and passing tracks, the view of those tracks to the east increased until at a point approximately twelve feet north of the north rail of the passing track the tracks could be seen east from the crossing to the east switch, a distance of 1,600 feet. From these facts it appears that at a point thirty-two feet north of the north rail of the main track, both the main and passing tracks are in view for at least 800 feet east of the crossing.

On the day in question, the two ladies were going toward the postoffice at Bascom from their home, which was north or northeast from the crossing. They were traveling at a rate of speed which was given as two and one-half miles per hour or three and two-thirds feet per second. On crossing the main track they were struck by a west-bound train of the defendant company, of which defendant Dunlap was the engineer. The train was traveling at the rate of sixty miles per hour, or eighty-eight feet per second, according to the testimony. Both of the occupants of the buggy were killed. No witness testified as to having seen the accident. Testimony was given, however, by people living in the vicinity to the effect that the whistle on the engine was not blown until the train reached a point between 450 and 530 feet east of the crossing, and that the bell was not rung.

The specifications of error present two questions for determination. They are: Whether the evidence on plaintiff's behalf was sufficient to require the case to be submitted to the jury, and whether or not the court erred in sustaining certain objections to offered testimony. We will deal with the questions in the order stated.

It is respondents' position that the facts and circumstances present a situation from which the only correct inference possible is that the decedent's own acts were the proximate cause of her death, and that the nonsuit was properly granted for [1] that reason. A motion for a nonsuit is in effect a demurrer to the evidence, and on the interposition thereof every fact will be deemed proven which the evidence tends to prove, and the evidence will be regarded in the light most favorable to plaintiff's case. These rules are so well settled that citation [2] of authority therefor is not required. Plaintiff insists that under the rules as stated, since the testimony of decedent cannot be obtained, he was entitled to have the case go to the jury for the reason that "there was no positive evidence tending to establish or prove that the deceased was not exercising ordinary care and prudence at the time of the collision," and cites subdivision 4, section 10606, Revised Codes of 1921, which provides that there is a disputable presumption "that a person takes ordinary care of his own concerns." In addition to this section, we are cited a number of authorities which deal with the question. Among these is 17 C. J. 1304. The rule there announced bears out the statement of counsel, but there is added the qualification that "this presumption does not apply where the surrounding facts and circumstances show to the contrary." In fact, an examination of the cases cited discloses a clear recognition of this qualification by all the courts to whose expressions we are directed.

The rules for determining the liability for injuries resulting from collisions on railroad crossings have been definitely established in this jurisdiction. In the case of *Everett* v. *Hines*, 64 Mont. 244, 208 Pac. 1063, this court, speaking through Mr.

Justice Galen, very thoroughly and carefully analyzed the Montana authorities dealing with this class of cases. And in *Normandin* v. *Payne*, 65 Mont. 543, 212 Pac. 285, many of the cases are referred to. A citation of these cases is sufficient to advise the investigator where the rules may be found. From the various expressions of this court, the following rules are [3, 4] gathered: The presence of a railroad track is of itself a warning of danger; a person approaching a railroad crossing is required to take all reasonable precautions to assure himself by actual observation that there is no danger from an approaching train; the failure of the persons in charge of the train to give warning signal of its approach to the crossing does not relieve the traveler of the necessity of making a vigilant use of his senses to ascertain whether it is safe to proceed; the traveler must use ordinary care to make his looking and listening reasonably effective. It may also be said that whenever it appears that there is a zone of safety within which a traveler upon a highway may, by looking or listening and stopping to do so if need be, ascertain the presence of an oncoming train, it is his duty to make his observation within such zone. If he proceeds from the place of safety regardless of an approaching train of which he has knowledge, or if he leaves the place of safety without having made a vigilant use of his senses to discover a danger which is present and could have been seen from such place, then it will be held to be his negligence which is the proximate cause of an injury resulting from a collision regardless of circumstances tending to show negligence on the part of the railroad operators. When a train is at a point which is within the traveler's vision while he is in a place of safety, he will be deemed either to have seen it and proceeded regardless of the danger, or to have failed to make a vigilant use of his senses. In such a situation the traveler is the author of the misfortune which befalls him, if he meets with that injury.

Applying the rules thus stated to the facts of the instant case, [5] we are of the opinion that the facts and circumstances dispute and rebut the presumption of due care on which ap-

pellant relies, and disclose a situation from which it must be held that the decedent's lack of care was the proximate cause of her death. While it is true that the testimony must be considered in its most favorable light for plaintiff, yet since we have nothing but circumstances from which to determine the liability we are bound by the rule that these circumstances must tend to exclude any other reasonable theory than that of defendants' liability, and we are not permitted to resort to speculation or conjectural inferences. (See *Monson* v. *Le France Cop. Co.,* 39 Mont. 50, 133 Am. St. Rep. 549, 101 Pac. 243.)

We have, then, a set of circumstances from which we can draw but one reasonable inference. Taking the fact of the collision and the rates of speed at which the train and buggy were traveling, together with the mathematical calculations, we find that when the buggy was thirty-two feet from the main track the train was not more than 788 feet east of the crossing, and was well within the decedent's vision, if she had made such a use of her senses as she was required to make. As has been said, at that point she had a view of at least 800 feet of the track east of the crossing. Having crossed the industrial track she must have been aware of the proximity of danger, and there is nothing in the record from which it can be said that if decedent had used her senses she could not have seen the train. At that point she was in a place of safety, and it was her duty to remain there until the danger passed. Having proceeded beyond to a position which was at least debatably dangerous, with the approaching train in view, it must be held that her negligence was the proximate cause of her own death, and that notwithstanding the speed of the train, and notwithstanding the failure to give proper warning signals, at the proper place, the railroad company was not liable for the result of the collision.

The second question has to do with the rulings of the trial [6] court in sustaining objections to certain offers of proof which were, in effect, that from a point not more than twenty-seven feet four inches north of the point of collision, there would be confusion in the mind of a traveler as to whether the

train was going on the main or the passing track. In the light of what has been said as to the place of safety, we can see no error in these rulings. It was, as has been said, the duty of decedent to remain in a place of safety, and if she, knowing that the train was approaching, or without having made a vigilant use of her senses, proceeded to a point where she became confused, the result would be the same—the fault would be hers. There can be no prejudice, therefore, since we are advised as to what plaintiff sought to prove, and that evidence would not have changed the result.

We recommend that the judgment be affirmed.

Per Curiam: For the reasons given in the foregoing opinion the judgment appealed from is affirmed.

*Affirmed.*