The evidence in this case shows that defendant's engine gave no warning of its approach to the crossing in question at *Page 99 
the time of this accident, as required by the foregoing section. Appellant so testified. In the absence of contradictory testimony this certainly makes a prima facie case of negligence on the part of respondents. (Hunter v. Montana Cent. Ry. Co.,22 Mont. 525, 57 P. 140; Sprague v. Northern P. Ry. Co.,40 Mont. 481, 107 P. 412; DeAtley v. Northern P. Ry. Co.,42 Mont. 224, 112 P. 76.) Plaintiff had the right to assume that the defendant would give all warnings required by the laws of this state, and to be governed by that assumption in his conduct, as an ordinarily prudent man, in the absence of evidence that they did give such warnings. Whether plaintiff used ordinary prudence under such circumstances was a question of fact for the jury and should have been submitted to them. (Butterfield v.Chicago etc. Ry. Co., 193 Iowa, 323, 185 N.W. 151; Barrett v.Chicago etc. Ry. Co., 190 Iowa, 525, 175 N.W. 950, 180 N.W. 670; Moore v. Chicago etc. Ry. Co., 102 Iowa, 595,71 N.W. 569; Platter v. Minneapolis etc. Ry. Co., 162 Iowa, 142,143 N.W. 992; Walker v. St. Paul etc. Ry. Co., 81 Minn. 404, 51 L.R.A. 632, 84 N.W. 222.)
In sustaining the motion for nonsuit, the court must have arrived at the legal conclusion that, if plaintiff had looked in the right direction at the right time, he would have seen the engine and avoided the danger. Therefore, he was held guilty of contributory negligence. The court certainly had no fixed "physical facts" from which to arrive at any such a conclusion, and in so doing it must have reasoned from uncertainties, that is, must have simply guessed at the relative position of the moving engine and automobile, the definite position of neither of which was more than guessed at by the witnesses. Our contention is that the court erred in so doing, the courts holding that the difference between the two is in physical facts from which to draw such a conclusion, even with the aid of engineering instruments, maps or blue-prints. Suppositions, or mere guesses, cannot be used as premises from which to draw legal conclusions. (Glanville v. Chicago etc. *Page 100 Ry. Co., 196 Iowa, 456, 193 N.W. 548; Butterfield v. Chicagoetc. Ry. Co., 193 Iowa, 323, 185 N.W. 151; Case v. Chicagoetc. Ry. Co., 147 Iowa, 747, 126 N.W. 1037; Union P. R.R.Co. v. Rosewater, 157 Fed. 168, 15 L.R.A. (n.s.) 803.)
If plaintiff looked and listened within a reasonable distance from the crossing, the question of whether he ought to have looked and listened at some other point or place is for the jury and not for the court. For the reason that the said rule is applied both to a driver and to a gratuitous passenger, the courts holding that the difference between the two is in the degree of vigilance required, we first cite those decisions in cases where the plaintiff is the driver, as follows: Rupener v.Cedar Rapids etc. Ry. etc. Co., 178 Iowa, 615, 159 N.W. 1048;Brossard v. Chicago etc. Ry. Co., 167 Iowa, 703,149 N.W. 915; Wolfe v. Chicago etc. Ry. Co., 166 Iowa, 506,147 N.W. 901; Wright v. Cincinnati etc. Ry. Co., 94 Ky. 114,21 S.W. 581; Union P. R.R. Co. v. Rosewater, 157 Fed. 168, 15 L.R.A. (n.s.) 803; Mecker v. Oregon Ry. Co., 40 Or. 6,66 P. 270; Rodrian v. New York etc. Ry. Co., 125 N.Y. 526,26 N.E. 741; Cleveland etc. Ry. Co. v. Harrington, 131 Ind. 426,30 N.E. 37; Smith v. Baltimore etc. Ry. Co., 158 Pa. 82,27 A. 847.
As plaintiff was a gratuitous passenger and had no control over the car in which he was riding, a less degree of vigilance was required of him, and the question of his contributory negligence was certainly for the jury. It was not for the court to say that as a matter of law he was negligent, and accordingly error was committed in so doing. (Glanville v. Chicago etc.Ry. Co., 196 Iowa, 456, 193 N.W. 548; Butterfield v. Chicago,etc. Ry. Co., 193 Iowa, 232, 185 N.W. 151; Cotton v. Willmeretc. Ry. Co., 99 Minn. 366, 116 Am. St. Rep. 422, 9 Ann. Cas. 935, 8 L.R.A. (n.s.) 643, 109 N.W. 835; Liabraaten v.Minneapolis etc. Ry. Co., 105 Minn. 207, 15 Ann. Cas. 1146, 117 N.W. 423.) *Page 101 
While, by use of the plat and photographs introduced in evidence, and a "straight edge," it might be possible to infer from the evidence that if plaintiff had looked over the edge of the obstructing cut, which hid the view of the approaching engine, at just the right time, he might have caught a fleeting glimpse of a fractional part thereof, that would not make him guilty of contributory negligence as a matter of law. It would simply be a fact of some importance for the consideration of the jury. (Glanville v. Chicago etc. Ry. Co., 196 Iowa, 456,193 N.W. 548; Butterfield v. Chicago, etc. Ry. Co.,193 Iowa, 323, 185 N.W. 151; Barrett v. Chicago etc. Ry. Co.,190 Iowa, 525, 175 N.W. 151, 180 N.W. 670; Case v. Chicago etc. Ry.Co., 147 Iowa, 747, 126 N.W. 1037.)
The trial court was correct in granting defendants' motion for a nonsuit for the reason that there was not sufficient evidence of negligence on the part of defendants to warrant the submission of the case to the jury. The only act of negligence relied upon by plaintiff was defendants' failure to sound the whistle and ring the bell as it approached the crossing. We submit that plaintiff's bare statement that he did not hear any signals, even when supported by Ballinger's statement that he listened but heard none, was not sufficient, in the absence of some further proof that they were in a situation to hear the signals, to warrant a jury in finding that defendants were negligent. (See Walthers v. Chicago etc. Ry. Co., 47 Mont. 501, 47 L.R.A. (n.s.) 587, 133 P. 357; Mullery v. Great Northern Ry. Co.,50 Mont. 408, 148 P. 323; Riley v. Northern P. Ry. Co.,36 Mont. 545, 93 P. 948; Hubbard v. Boston A.R. Co.,159 Mass. 320, 34 N.E. 459; Howe v. Northern R. Co. of NewJersey, 78 N.J.L. 683, 76 A. 979; Bannister *Page 102 
v. Illinois Cent. R. Co., 199 Iowa, 657, 202 N.W. 766; Davis
v. Payne, 120 S.C. 473, 113 S.E. 325.)
But even if it were to be held that the evidence of respondents' negligence were sufficient to take the case to the jury, it does not follow that that negligence was the proximate cause of appellant's injury, for the evidence shows that the collision was the direct result of appellant's disregard for his own safety.
It is now settled law in this state by the decision in the case of Laird v. Berthelote, 63 Mont. 122, 206 P. 445, that one who occupies an automobile as a guest of the driver is not charged with the driver's negligence, but it is likewise the law that such a guest has the same duty as the driver, to exercise ordinary care for his own personal safety in approaching a railroad crossing. (Sherris v. Northern P. Ry. Co.,55 Mont. 189, 175 P. 269; Engstrom v. Canadian Northern R.Co., 291 Fed. 736; Southern Ry. Co. v. Priester, 289 Fed. 945; Gulf M. N.R. Co. v. Brown, 138 Miss. 39, 102 So. 855; Leopold v. Texas etc. Ry. Co., 144 La. 1000, 81 So. 602; Blanchard v. Main Cent. Ry. Co., 116 Me. 179,100 A. 666; Brown v. McAdoo, 195 Iowa, 286, 188 N.W. 7; Kirby v.Kansas City K.V. W.R. Co., 106 Kan. 163, 18 A.L.R. 299, 186 P. 744; Barrett v. Chicago etc. Ry. Co., 190 Iowa, 525,175 N.W. 950; Cooper v. Chicago etc. R. Co., 117 Kan. 703,232 P. 1024.)
From the evidence it appears that appellant either did not look, or, if he did look, that he did not see the oncoming train. In either case he was guilty of contributory negligence. (Hunter v. Montana Cent. Ry. Co., 22 Mont. 525, 57 P. 140;Sprague v. Northern P. Ry. Co., 40 Mont. 481, 107 P. 412;Mason v. Northern P. Ry. Co., 45 Mont. 474, 124 P. 471;Walthers v. Chicago etc. Ry. Co., 47 Mont. 501, 47 L.R.A. (n.s.) 587, 133 P. 557; Meehan v. Great Northern Ry. Co.,43 Mont. 73, 114 P. 781; Sherris v. Northern P. Ry. Co.,55 Mont. 189, 175 P. 269; George v. Northern *Page 103 P. Ry. Co., 59 Mont. 162, 196 P. 869; Keith v. GreatNorthern Ry. Co., 60 Mont. 505, 199 P. 718; Everett v.Hines, 64 Mont. 244, 208 P. 1063; Mitchell v. NorthernP. Ry. Co., 63 Mont. 500, 208 P. 903; Roberts v. Chicagoetc. Ry. Co., 67 Mont. 472, 216 P. 332; Normandin v.Payne, 65 Mont. 543, 212 P. 285; West v. Davis, 71 Mont. 31,227 P. 41.) The principles of law laid down in these Montana cases are in harmony with the great weight of authority. Some of the recent cases are: Fitch v. New York Cent.,233 N.Y. 356, 135 N.E. 598; Robinson v. Chesapeake O. Ry. Co.,90 W. Va. 411, 110 S.E. 870; Hammack v. Payne (Mo.App.),235 S.W. 467; Kemmler v. Pennsylvania R. Co., 108 A. 592;Waters v. Chicago etc. Ry. Co., 189 Iowa, 1097, 178 N.W. 534;Olds v. Hines, 95 Or. 580, 187 P. 586, 188 P. 716;Kennedy v. New York, N.H. H.R.R., 43 R.I. 358,112 A. 429; Baltimore Ohio Ry. Co. v. Newton, 137 Md. 21,111 A. 481.
Furthermore, it was plaintiff's plain duty to cause Bollinger to stop before crossing the track. (Brothers v. North CoastPower Co., 127 Wn. 570, 221 P. 311.)
Appellant further claims that the physical facts are uncertain and unreliable, and again we disagree. There is no more reliable proof than physical facts. Once established, they remain an unalterable barrier to the discrepancies and weaknesses to which most forms of evidence are susceptible. The question as to whether or not the physical facts will control is not an open one in Montana. All of the Montana cases heretofore cited proceed upon the theory that one may not ignore the physical facts, and that if it appears that a vigilant use of the senses would have prevented the collision, plaintiff must be guilty of contributory negligence in ignoring the existence of physical conditions which, if observed, would have saved him. Not only is that the theory upon which those cases proceed, but the physical facts rule has been actually applied in a number of the Montana cases as well as in virtually all *Page 104 
other jurisdictions. (Roberts v. Chicago etc. Ry. Co.,67 Mont. 472, 216 P. 332; Casey v. Northern P. Ry. Co.,60 Mont. 56, 198 P. 141; Escalier v. Great Northern Ry. Co.,46 Mont. 238, Ann. Cas. 1914B, 468, 127 P. 458; White v.Arizona Eastern (Ariz.), 245 P. 270; Gunby v. Colorado S.R. Co., 77 Colo. 225, 235 P. 566; Billig v. Southern P.Co., 192 Cal. 357, 219 P. 992.)
This action is for damages for personal injuries received by plaintiff in a railroad crossing collision. The pleadings admit the corporate entity of defendant company and its engagement in the business of owning and operating a railway system as a common carrier in the state of Montana and other states; that a portion of this system extended through Fergus county, Montana, and the existence of a public highway, crossing over the line of the railway between the station of Denton and Hoosac in that county; that the defendant company owned, maintained and operated, in the carrying on of its business, engines, cars and other equipment necessarily employed in the business of a common carrier; that on or about October 12, 1922, one of the trains of defendant company was being operated on its railroad in Fergus county in a northerly direction and approached the crossing; that an automobile in which the plaintiff was riding came into collision with one of the trains of the defendant company upon the crossing on or about October 12, 1922; and that the defendant Warner was employed by the defendant company as an engineer.
The cause of action is predicated upon the alleged and controverted known dangerous character of the crossing and the negligence of defendants in their approach thereto by running at an excessive speed and in failing to sound the whistle, ring the bell or give other warning of the approach of the engine involved in the collision which resulted in general and special *Page 105 
damages to the plaintiff. Contributory negligence on the part of plaintiff in permitting the automobile to approach the crossing at a high rate of speed and in failing to cause the speed to be slackened in approaching the crossing, and in failing to stop, look and listen, the elements of daylight and lack of visual obstruction being injected, is put in issue by the answer and reply.
Upon the trial by a jury, following the production of plaintiff's evidence, the court upon motion of the defendants entered a judgment of nonsuit. Plaintiff appeals from the judgment.
The evidence in the case is that in the midafternoon of October 12, 1922, which was a bright, clear day with a strong wind blowing from the northwest, plaintiff was riding en route
from Denton to Lewistown as a guest and passenger of one Ballinger, the owner and driver of a Dodge roadster, which was in good running order, with the brakes in good condition. The roads were dry. Plaintiff was sitting on the right-hand seat, which was the side nearest the approaching engine, and no side curtains were in place. The crossing in question is approached on the highway from the west by a gradual slope from a hill about a quarter of a mile distant, and the railway approaches the crossing from the south through a cut of varying depth and width. At a point 50 feet westerly from the center of the track at the crossing an occupant of an automobile could see the upper part of an engine on the track on the right, or south, at a distance of 198 feet from the center of the crossing; at a point on the highway 40 feet westerly from the center of the track at the crossing an engine on the track on the right could be seen by an occupant of an automobile, from the center of the boiler up, at a distance of 235 feet; at a point on the highway 30 feet westerly from the center of the track at the crossing an engine on the track on the right could be seen by an occupant of an automobile, from the center of the boiler up, a distance of 293 feet; while at a point on the highway 20 or 25 feet westerly from the center of the track *Page 106 
at the crossing an occupant of an automobile could see an engine on the track at the right of a distance of more than 335 feet.
The crossing was a country crossing and not within the limits of any city or town, and no flagman or automatic bell was maintained at the same. Plaintiff and Ballinger testified that they estimated the speed of the approaching engine at 45 and 50, respectively, miles per hour, which would be from 66 to 73 feet per second. When a point on the highway 300 feet from the crossing was reached, the automobile was traveling at the estimated rate of 37 or 44 feet per second, whereupon its estimated speed was reduced to about 22 feet per second, and it was estimated that the automobile was traveling at a rate not in excess of this when it reached a point 40 feet from the track. By the time it had reached a point 20 feet from the track its estimated speed had been reduced to between 7 and 15 feet per second, at which point the brakes were applied, but the automobile was not stopped until the front wheels were over the first rail of the track. The impact of the resulting collision threw the automobile against a signpost 50 feet from the point of contact. From the above estimates it follows that the average speed of the automobile from the 300-foot point to the 40-foot point was from 29 1/2 to 33 feet per second, from the 40-foot point to the 30-foot point from 18 1/4 to 20 1/4 feet per second, from the 30-foot point to the 20-foot point from 10 3/4 to 16 3/4 feet per second, and from the 20-foot point to the first rail of the track from 3 1/2 to 7 1/2 feet per second; and the 20-foot point was reached from 5.7 to 2.7 seconds before the collision, the 25-foot point from 6.05 to 2.975 seconds before the collision, the 30-foot point from 6.4 to 3.25 seconds before the collision, and the 40-foot point from 7.1 to 3.8 seconds before the collision.
Upon the basis of the engine speed as estimated by plaintiff and Ballinger, at the 20-foot point the approaching engine *Page 107 
would have been from 178 to 416 feet distant from the crossing and in view of the occupants of the approaching automobile; at the 25-foot point from 196 to 442 feet distant from the crossing and appearing in the unobstructed visual angle of the occupants of the approaching automobile upon the engine reaching a point 335 feet distant from the crossing; at the 30-foot point from 214 to 467 feet distant from the crossing and approaching in the unobstructed visual angle of the occupants of the approaching automobile upon the engine reaching a point 293 feet distant from the crossing; and at the 40-foot point from 251 to 518 feet distant from the crossing and not in view of the occupants of the approaching automobile. Accordingly upon the above basis of estimated engine speed, at some point between the 25-foot point and the 20-foot point on the highway the approaching engine would enter the unobstructed visual angle of the occupants of the approaching automobile.
The speed of the engine, however, was estimated by plaintiff from the 20-foot point, and when they were at this point, according to plaintiff's testimony, the engine was 75 feet away, and, according to Ballinger's testimony, 50 feet away. It is apparent, therefore, that they both overestimated the speed of the engine, and in order for the collision to have occurred at the crossing between the automobile traveling at the speed testified to, the engine could not have been traveling at a speed in excess of 27.8 feet per second, or 19 miles per hour.
Upon the basis of the last above related physical facts, at the 25-foot point the approaching engine would have been at the most 168 feet distant from the crossing and in view of the occupants of the automobile; at the 30-foot point not more than 177 feet distant from the crossing and in view of the occupants of the automobile; and at the 40-foot point not more than 197 feet distant from the crossing and in view of the occupants of the automobile. Accordingly, upon the last above basis of *Page 108 
engine speed, at some point between the 40-foot point and the 300-foot point on the highway the approaching engine would enter the unobstructed visual angle of the occupants of the approaching automobile. The only escape from this conclusion is in discrediting the testimony as to the automobile speed at the 20-foot point and, upon accepting the testimony that the engine was approaching at a speed of from 66 to 73 feet per second as observed from said point to be from 50 to 75 feet away, concluding that the automobile was traveling at the 20-foot point at a speed of not less than 35.2 feet per second, or 24 miles per hour.
Either, then, the approaching engine entered the unobstructed visual angle of the occupants of the approaching automobile at a greater distance on the highway than 40 feet from the crossing, or the automobile approached the crossing at a rate of speed in excess of 24 miles per hour as measured at a point on the highway 20 feet from the crossing.
With respect to defendant's failure to sound the whistle or ring the bell, the plaintiff testified, "I heard no noise as we approached; I did not hear anything to indicate the approach of a train as we proceeded down the highway towards the crossing"; while Ballinger testified, "I listened for the whistle or bell but heard nothing; I heard no warning signals from the train or engine as it approached the crossing."
When the automobile came over the brow of the hill plaintiff looked and listened in both directions, and particularly toward the south, across the cut, for any signs of an approaching train, but saw or heard none. At the 300-foot point plaintiff and Ballinger observed the danger sign there located. At the 40-foot point plaintiff testified that he looked again toward the south as far down the railroad track as he could see, but saw no smoke nor train and heard no signals of an approaching train; that he then looked around Ballinger to the north with a like result; and that he again immediately looked to the *Page 109 
south, the automobile being then at the 20-foot point, and saw the engine and caboose comprising the train.
Plaintiff, as Ballinger's guest, and though familiar with the dangerous nature of the crossing at which the accident occurred and with the surrounding terrain, made no effort to cause Ballinger to stop, look or listen, but relied entirely upon Ballinger's ability to manage the automobile, except that plaintiff remarked: "This is a hell of a crossing."
There was evidence of general and special injuries. The only error specified is that the court erred in sustaining the motion for nonsuit. Accordingly, the only question for review is whether or not plaintiff failed to prove a sufficient case for the jury.
The rule obtaining on an appeal from a judgment of nonsuit has[1] been variously stated to be that every fact which the evidence tends to prove and which is essential to plaintiff's recovery must be treated as proved (Grover v. Hines, 66 Mont. 230,213 P. 250; McLaughlin v. Bardsen, 50 Mont. 177,145 P. 954; Gans v. Woolfolk, 2 Mont. 458); that plaintiff's evidence must be taken as true (Larson v. Marcy, 61 Mont. 1,201 P. 685); and that the evidence must be considered in the light most favorable to plaintiff (Grover v. Hines, supra;Larson v. Marcy, supra; McLaughlin v. Bardsen, supra; McGowanCommercial Co. v. Midland Coal etc. Co., 41 Mont. 211,108 P. 655).
The above rules, however, are limited by the further rule that the inherent improbability of a statement may deny it all claim of belief. (Landsman v. Thompson, 9 Mont. 182, 191,22 P. 1148; Mattock v. Goughnour, 11 Mont. 265, 28 P. 301;Newell v. Whitwell, 16 Mont. 243, 40 P. 866; Nelson v.Big Flatfoot Milling Co., 17 Mont. 553, 44 P. 81; Casey v.Northern P. Ry. Co., 60 Mont. 56, 198 P. 141; McIntyre v.Northern P. Ry. Co., 56 Mont. 43, 180 P. 971; First *Page 110 State Bank v. Larsen, 65 Mont. 404, 211 P. 214; Sylvester
v. Anaconda C. Min. Co., 73 Mont. 465, 236 P. 1067.)
The general rule obtaining on the propriety of entering a[2] judgment of nonsuit has been variously stated to be that it is properly entered in cases where the court would grant a new trial if a jury should bring in a verdict in favor of the plaintiff (Garver v. Lynde, 7 Mont. 108, 14 P. 697), where plaintiff's own evidence shows that he ought not to recover (Howard v. Flathead Ind. Tel. Co., 49 Mont. 197,141 P. 153; Cummings v. Helena Livingston S. R. Co., 26 Mont. 434,68 P. 852), and only when the facts are undisputed and such that "all reasonable men must draw the same conclusions from them" (Nord v. Boston Mont. Con. C. S. Min. Co., 30 Mont. 48,75 P. 681).
Whether or not there is substantial evidence in support of plaintiff's case is always a question of law for the court (Flynn v. Poindexter Orr Live Stock Co., 63 Mont. 337,207 P. 341), and a judgment of nonsuit is properly entered when the evidence is unsubstantial (Flynn v. Poindexter Orr LiveStock Co., supra; Lee v. Stockmen's National Bank, 63 Mont. 262,207 P. 623; Escallier v. Great Northern Ry. Co.,46 Mont. 238, Ann. Cas. 1914B, 468, 127 P. 458; O'Brien v.Stromme, 54 Mont. 221, 169 P. 36; Briggs v. Collins,27 Mont. 405, 71 P. 307).
While a case should never be withhdrawn from the jury unless it appears as a matter of law, that a recovery cannot be had upon any view of the facts which the evidence reasonably tends to establish, yet, when there is no evidence in support of plaintiff's case, or the evidence is so unsubstantial that the court would feel compelled to set aside a verdict if one should be rendered for plaintiff, a nonsuit should be granted (Loudon
v. Scott, 58 Mont. 645, 194 P. 488).
Under the provisions of section 6521, Revised Codes of 1921,[3] the defendants were charged with the duty of sounding *Page 111 
the whistle at a point between 50 and 80 rods (between 825 and 1,320 feet), and ringing the bell from such point until the crossing was reached (Sprague v. Northern P. Ry. Co.,40 Mont. 481, 107 P. 412), and plaintiff had the burden of proving that they did not do so. The testimony as to the alleged default in this respect was entirely negative. While negative testimony may be sufficient to establish such issue (Walters v. ChicagoM. P.S. Ry. Co., 47 Mont. 501, 46 L.R.A. (n.s.) 702, 133 P. 357; Riley v. Northern P. Ry. Co., 36 Mont. 545,93 P. 948; Mullery v. Great Northern Ry. Co., 50 Mont. 408,148 P. 323), the attendant circumstances must be such as to afford a reasonable opportunity to hear the warning signals (Howe v.Northern R. Co. of New Jersey, 78 N.J.L. 683, 76 A. 979;Davis v. Payne, 120 S.C. 473, 113 S.E. 325). Applying these rules, however, to the evidence in the instant case, we are unable to conclude that the attendant circumstances were such that reasonable men could reach no other conclusion than that no reasonable opportunity was afforded to plaintiff and Ballinger to hear the warning signals.
Whenever, however, the plaintiff's own case presents evidence[4] which, unexplained, makes out prima facie contributory negligence upon his part, there must be further evidence exculpating him or he cannot recover. (Hunter v. Montana Cent.Ry. Co., 22 Mont. 525, 57 P. 140; Harrington v. Butte, A. P. Ry. Co., 37 Mont. 169, 16 L.R.A. (n.s.) 395, 95 P. 8;Longpre v. Big Blackfoot Milling Co., 38 Mont. 99,99 P. 131; Meehan v. Great Northern Ry. Co., 43 Mont. 72,114 P. 781; Mott v. Northern P. Ry. Co., 44 Mont. 471,120 P. 809; Neilson v. Missoula Creamery Co., 59 Mont. 270,196 P. 357; George v. Northern P. Ry. Co., 59 Mont. 162,196 P. 869; Cameron v. Judith M. C. Co., 61 Mont. 118,201 P. 575; Puckett v. Sherman Reed, 62 Mont. 395, 205 P. 250;Haney v. Mutual Creamery Co., 67 Mont. 278, *Page 112 215 P. 656; Holland v. Pence Automobile Co., 72 Mont. 500,234 P. 284.)
In that it is the rule that the negligence of the driver is[5] not generally imputed to the passenger (Laird v.Berthelote, 63 Mont. 122, 206 P. 445), the default of Ballinger, the driver, in disobeying the provision contained in section 3842, Revised Codes of 1921, requiring certain specified acts of all persons "driving" motor vehicles upon the public highways in this state, outside of corporate limits of incorporated cities or towns, cannot, by imputation, be made the default of plaintiff, the passenger. The person in control of the motive power of a motor vehicle is said to be "driving" it. (Commonwealth v. Crowninshield, 187 Mass. 221, 226, 68 L.R.A. 245, 72 N.E. 963.) But the above general rule of nonimputation does not absolve the passenger from taking such precaution for his own safety as under the particular circumstances are reasonable. This general rule was recognized and applied by this court in Sherris v. Northern P. Ry. Co., 55 Mont. 189,175 P. 269, and quoted with approval in Laird v. Berthelote,supra, and these cases we now expressly reapprove.
While the rule of reasonable care (apart from the statutory[6, 7] requirements and their particular applications) does not ordinarily require a motorist to stop, it does require him to look and listen. (Hunter v. Montana Cent. Ry. Co., supra;Normandin v. Payne, 65 Mont. 543, 212 P. 285; Keith v.Great Northern Ry. Co., 60 Mont. 505, 199 P. 718; West v.Davis, 71 Mont. 31, 227 P. 41.) Moreover, a person is presumed to see that which he could see by looking. In other words, a person who testifies that he looked for approaching trains will be presumed to have seen a train which was in plain sight. He will not be permitted to say that he did not see what he must have seen, had he looked. (Hines v. Smith (C.C.A.), 270 Fed. 132; Waters v. Chicago, M. St. P. Ry. Co.,189 Iowa, 1097, 178 N.W. 534; Berry on Automobiles, 4th ed., sec. 760.) And if his view of the track is obscured, *Page 113 
or factors make the sound of an approaching train inaudible, he must take such precautions as will render sight or hearing effective before moving into a position from which he cannot extricate himself in the event of the near approach of the train. (Berry on Automobiles, 4th ed., sec. 763.) Necessarily the element of excessive speed of the automobile in approaching the crossing becomes material. (Berry on Automobiles, 4th ed., sec. 780.)
Under the circumstances in this case, the plaintiff proceeded[8] toward the crossing, not with ordinary care and prudence, but carelessly, recklessly. The record does not disclose explanatory evidence of the requisite character. If upon plaintiff's proof the court had submitted the case to the jury and the jury had found for the plaintiff, the court would have been obliged to set the verdict aside.
The judgment is affirmed.
Affirmed.
MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, STARK and MATTHEWS concur. *Page 114